97 Cal.Rptr.2d 58 (2000)
23 Cal.4th 355
1 P.3d 650
The PEOPLE, Plaintiff and Respondent,
v.
Melvin Eugene HANSON, Defendant and Appellant.
No. S078689.
Supreme Court of California.
June 19, 2000.
*59 Mark D. Greenberg, under appointment by the Supreme Court, Oakland, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, William V. Ballough and Kyle S. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.
BROWN, J.
When a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing. (People v. Henderson (1963) 60 Cal.2d 482, 495-497, 35 Cal.Rptr. 77, 386 P.2d 677 (Henderson).) The question here is whether a statutorily mandated restitution fine comes within this rule. We conclude such fines constitute punishment and find no principled basis for excluding them from the rationale of Henderson. Accordingly, we reverse the judgment of the Court of Appeal, which upheld a $9,000 increase in defendant's restitution fine on resentencing.

FACTUAL AND PROCEDURAL BACKGROUND
A jury convicted defendant Melvin Eugene Hanson of first degree murder (Pen. Code, § 187, subd. (a); all undesignated statutory references are to the Penal Code), three counts of insurance fraud former Ins.Code, § 556, now Ins.Code, § 1871.1), two counts of grand theft (Pen. Code, § 487, former subd. 1), and conspiracy to commit these crimes (id., § 182). It also found true a special circumstance allegation (id., § 190.2, subd. (a)(1)) and two excessive taking allegations (id., § 12022.6, subd. (b)). The trial court sentenced defendant to life in prison without the possibility of parole for the special circumstance murder conviction in addition to various terms of imprisonment on the other counts. The court also imposed a restitution fine of $1,000 pursuant to former Government Code section 13967, subdivision *60 (a). (Stats.1988, ch. 975, § 1, pp. 3151-3152.)
The Court of Appeal affirmed in part; modified the special circumstance murder conviction to second degree murder; reversed and dismissed with prejudice the special circumstance finding; and reversed defendant's sentence as to all counts. It remanded the matter to the trial court solely for resentencing. On remand, a different court sentenced defendant to 25 years to life in prison on the conspiracy to murder count and stayed various lesser terms of imprisonment on the other counts pursuant to section 654. The court also increased the restitution fine to $10,000.
Defendant appealed the additional fine contending the increase violated the state constitutional prohibition against double jeopardy. (Cal. Const., art. I, § 15.) The Court of Appeal rejected this argument. Concluding it remained an open question whether the prohibition against increased sentence after a reversal on appeal applies to fines, the court found no "`"cogent reasons"'" to construe the state prohibition any more broadly than its federal counterpart. (People v. Monge (1997) 16 Cal.4th 826, 844, 66 Cal.Rptr.2d 853, 941 P.2d 1121 (Monge); see id. at pp. 843-845, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) Since the federal double jeopardy clause "imposes no restrictions upon the length of a sentence imposed upon reconviction" (North Carolina v. Pearce (1969) 395 U.S. 711, 719, 89 S.Ct. 2072, 23 L.Ed.2d 656 (Pearce)), defendant's increased fine did not violate state constitutional law either. In reaching this conclusion, the court expressly disagreed with the contrary holding of the Court of Appeal in People v. Thompson (1998) 61 Cal.App.4th 1269, 1276, 76 Cal.Rptr.2d 267. We granted review to resolve this conflict and to determine the proper scope of our Constitution's double jeopardy protection in the context of resentencing.

DISCUSSION
The seminal decision of Henderson, supra, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677, and its progeny lie at the crux of the issue before us. In Henderson, the defendant secured reversal of his murder conviction for which he had been sentenced to life in prison. Following retrial, he was again convicted of murder but was sentenced to receive the death penalty. On appeal, he argued the increased punishment violated the state's prohibition against double jeopardy, and this court agreed.[1]
In reaching this conclusion, we analogized to the rule of both state and federal law that under the double jeopardy clause "a reversed conviction of a lesser degree of a crime precludes conviction of a higher degree on retrial...." (Henderson, supra, 60 Cal.2d at p. 497, 35 Cal.Rptr. 77, 386 P.2d 677; see Gomez v. Superior Court (1958) 50 Cal.2d 640, 645-649, 328 P.2d 976; Green v. United States (1957) 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199.) "It is immaterial to the basic purpose of the constitutional provision against double jeopardy whether the Legislature divides a crime into different degrees carrying different punishments or allows the court or jury to fix different punishments for the same crime." (Henderson, supra, 60 Cal.2d at p. 497, 35 Cal.Rptr. 77, 386 P.2d 677.) In either instance, "a defendant is not required to elect between suffering an erroneous conviction to stand unchallenged and appealing therefrom at the cost of forfeiting a valid defense to the greater offense...." (Id. at p. 496, 35 Cal.Rptr. 77, 386 P.2d 677.) "`"[A] defendant faced with such a `choice' takes a `desperate chance' in securing the reversal of the erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma."' [Citation.]" (Ibid., quoting Gomez v. Superior Court, supra, 50 Cal.2d at pp. 651-652, 328 P.2d 976, quoting Green v. United States, supra, *61 355 U.S. at p. 193, 78 S.Ct. 221.) In sum, "[a] defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (Henderson, supra, 60 Cal.2d at p. 497, 35 Cal.Rptr. 77, 386 P.2d 677; see also In re Cameron (1968) 68 Cal.2d 487, 491-492, 67 Cal.Rptr. 529, 439 P.2d 633 [finding that habeas corpus petitioner who had received life imprisonment did not deliberately bypass orderly procedure of appeal under pre-Henderson rule due to fear of death penalty on resentencing].)
This reasoning has not remained confined to the capital sentencing context. (Cf. People v. Superior Court (Marks) (1991) 1 Cal.4th 56, 77, fn. 19, 2 Cal. Rptr.2d 389, 820 P.2d 613.) In People v. Ali (1967) 66 Cal.2d 277, 57 Cal.Rptr. 348, 424 P.2d 932, the defendant was originally sentenced concurrently on three counts of credit card fraud. On resentencing following appeal, he received consecutive terms. In light of Henderson, this court unanimously found error: "Where a defendant has been sentenced to concurrent terms and then upon a retrial is sentenced to consecutive terms for the same offenses, his punishment has been increased by indirect means. The reasoning which prevents an increase by direct means would seem to be applicable in such a situation, as a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal." (People v. Ali supra, 66 Cal.2d at p. 281, 57 Cal.Rptr. 348, 424 P.2d 932.)
In People v. Collins (1978) 21 Cal.3d 208, 145 Cal.Rptr. 686, 577 P.2d 1026, the defendant was charged with 15 separate felony counts and entered into a plea bargain in which he pled guilty to one count of oral copulation; the remaining counts were dismissed. After suspending criminal proceedings, the court found the defendant to be a mentally disordered sex offender and committed him to a state hospital for an indefinite period. Shortly thereafter, the Legislature decriminalized the conduct underlying the plea. (Id. at p. 211, 145 Cal.Rptr. 686, 577 P.2d 1026; see Stats. 1975, ch. 877, § 2, p. 1958.) Upon reinstatement of criminal proceedings, the defendant objected to the court's jurisdiction to sentence him under the repealed statute.
This court agreed and reversed the conviction with directions to dismiss the count in question. Given the circumstances, we did not foreclose reinstatement of any or all of the other 14 charges, but nevertheless circumscribed the permissible range of punishment. "[W]e must fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled. [¶] This may best be effected by permitting the state to revive one or more of the dismissed counts, but limiting defendant's potential sentence to not more than three years in state prison, the term of punishment set by the Community Release Board pursuant to the determinate sentencing act [citation]." (People v. Collins, supra, 21 Cal.3d at p. 216, 145 Cal.Rptr. 686, 577 P.2d 1026.) In support of this determination, the court cited to "a line of cases based on principles of double jeopardy" in which our concerns were "specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (Ibid.) As in Henderson, we concluded the defendant "should not be penalized for properly invoking [precedent] to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain."[2] (Collins, at p. 217, 145 *62 Cal.Rptr. 686, 577 P.2d 1026; see also People v. Hood (1969) 1 Cal.3d 444, 459, 82 Cal.Rptr. 618, 462 P.2d 370 [on retrial, court could impose sentence of not more than 14 years, the defendant's maximum term had he not appealed]; cf. In re Ferguson (1965) 233 Cal.App.2d 79, 81-82, 43 Cal.Rptr. 325 [following Henderson, no increase in punishment on resentencing after successful new trial motion].)[3]
We now turn to the question whether the foregoing principles apply with equal force to restitution fines. The Court of Appealundisputed by the partiesassumed such fines constitute punishment for purposes of double jeopardy. We solicited supplemental briefing to assess the propriety of that assumption. Drawing on the analytical framework set forth in Hudson v. United States (1997) 522 U.S. 93, 99-100,118 S.Ct. 488, 139 L.Ed.2d 450 (Hudson), the Attorney General asserts a restitution fine is a civil penalty and thus falls outside constitutional protection. Defendant urges us to formulate a more expansive test commensurate with the broader construction of our state Constitution derived from Henderson, supra, 60 Cal.2d 482, 35 Cal. Rptr. 77, 386 P.2d 677. We need not definitively resolve this threshold issue, for even under the federal standard we conclude restitution fines are punishment. (See People v. Thompson, supra, 61 Cal. App.4th at p. 1276, 76 Cal.Rptr.2d 267 [applying rationale of Henderson to increased restitution, fine]; cf. Jeffers v. United States (1977) 432 U.S. 137, 155, 97 S.Ct. 2207, 53 L.Ed.2d 168 [under federal Constitution, fines "are treated in the same way as prison sentences for purposes of double jeopardy"].)
"Whether a particular punishment is criminal or civil [for purposes of double jeopardy] is, at least initially, a matter of statutory construction. [Citation.] A court must first ask whether the legislature, `in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' [Citation.]" (Hudson, supra, 522 U.S. at p. 99, 118 S.Ct. 488.) An initial determination that the legislature did not intend to impose a criminal sanction does not end the inquiry, however, since a statutory scheme may be "`so punitive either in purpose or effect' [citation] as to `transfor[m] what was clearly intended as a civil remedy into a criminal penalty,' [citation]." (Ibid.) In making the latter determination, the United States Supreme Court has suggested that the factors listed in Kennedy v. Mendozor-Martinez (1963) 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644, "provide useful guideposts...."[4] (Hudson, supra, 522 U.S. at p. 99, 118 S.Ct. 488.) For the reasons explained below, we conclude the Legislature intended restitution fines as punishment. It is therefore unnecessary *63 to pursue any additional inquiry into their underlying character.
To begin, restitution fines are imposed only upon conviction of a criminal offense. (See § 1202.4, subd. (a).) Although originally enacted as part of the Government Code, the operative statute is now contained in the Penal Code (§ 1202.4; see Stats.1994, ch. 1106, § 3, eff. Sept. 29, 1994; see also Stats.1996, ch. 629, § 3 [amending § 1202.4 substantially to its present form]), which expressly denominates "fines" as "punishments." (§ 15; see §§ 17, subd. (b), 18, 19, 19.6, 19.8; cf. § 9 [distinguishing recovery of civil remedies from liability "for any act or omission declared punishable" by the Penal Code].) Section 1202.4, subdivision (a)(3) provides that restitution fines are distinct from restitution orders and are "in addition to any other penalty...." (Cf. Stats.1994, ch. 1106, § 1, subds. (b), (c) [Legislature finds and declares restitution "is recognized to have a rehabilitative effect on criminals" and "is recognized as a deterrent to future criminality."].)
Several other features of the statute compare with the imposition of criminal punishment generally. Except for "compelling and extraordinary reasons," which the trial court must state on the record (§ 1202.4, subd. (c)), a restitution fine is mandatory even in the absence of a crime victim (§ 1202.4, subd. (a)(3)(A)) and must be made a condition of probation, if granted (§ 1202.4, subd. (m)). As with other types of fines, the money is deposited into the state treasury; it is earmarked for the Restitution Fund, which enables the state to compensate victims of crimes. (§ 1202.4, subd. (e); cf. § 1463.001 [providing for distribution of base fines "to the specified funds of the state or local agency"].) The amount varies in the trial court's discretionranging from a minimum of $200 to a maximum of $10,000 (§ 1202.4, subd. (b)(1))and may be calculated by multiplying $200 by the years of imprisonment imposed and then multiplying by the number of counts. (§ 1202.4, subd. (b)(2).) In addition, the court "shall consider any relevant factors including ... the seriousness and gravity of the offense and the circumstances of its commission, ... and the number of victims involved in the crime." (§ 1202.4, subd. (d).) "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (§ 1202.4, subd. (c).)
Viewed in comparison with other forms of punishment, the statutory scheme thus confirms the Legislature intended restitution fines as a criminal penalty rather than as a civil remedy. (Cf. People v. Walker (1991) 54 Cal.3d 1013, 1024, 1 Cal.Rptr.2d 902, 819 P.2d 861 [restitution fine "qualifies as punishment" for purpose of enforcing plea bargain]; People v. Zito (1992) 8 Cal.App.4th 736, 741, 10 Cal.Rptr.2d 491 [restitution fine is punishment for purpose of ex post facto analysis].) The Attorney General urges us to make a contrary finding by applying the factors enumerated in Kennedy v. Mendoza-Martinez, supra, 372 U.S. at pages 168-169, 83 S.Ct. 554. (See Hudson, supra, 522 U.S. at p. 99, 118 S.Ct. 488.) As previously noted, however, a court need consult the Mendoza-Martinez "guideposts" only when it initially determines "the legislature `has indicated an intention to establish a civil penalty....'" (Hudson, at p. 99, 118 S.Ct. 488.) Our finding that the Legislature meant restitution fines as criminal punishment obviates the further inquiry proposed by the Attorney General.
Having made this determination, we now squarely consider whether restitution fines come within the rule of Henderson. As noted, imposition is mandatory with a minimum of $200 and a maximum of $10,000. Thus, on resentencing the trial court has not only the obligation to reimpose a fine, but the discretion to substantially increase it depending upon the original amount. Here, the increase was tenfold. In these circumstances, one who appeals an erroneous conviction at the risk of a greater fine is *64 indistinguishable from one who hazards a longer period of incarceration. In both situations, the defendant suffers a penalty for invoking the right to raise that challenge. (See People v. Thompson, supra, 61 Cal.App.4th at p. 1276, 76 Cal.Rptr.2d 267; People v. Jones (1994) 24 Cal.App.4th 1780, 1785, 30 Cal.Rptr.2d 238.)
In reaching a contrary conclusion, the Court of Appeal essentially disregarded this central premise of Henderson and considered itself at liberty to address the application of double jeopardy principles to statutory fines as a matter of first impression. (Cf. People v. Thornton (1971) 14 Cal.App.3d 324, 92 Cal.Rptr. 327.)[5] It then read the lead opinion in Monge, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, in light of People v. Hernandez (1998) 19 Cal.4th 835, 80 Cal. Rptr.2d 754, 968 P.2d 465 to require "cogent reasons" (Gabrielli v. Knickerbocker (1938) 12 Cal.2d 85, 89, 82 P.2d 391) for interpreting the state double jeopardy prohibition differently from the federal guarantee. Under the Fifth Amendment, a defendant may be subject to increased punishment on retrial (Pearce, supra, 395 U.S. at pp. 720-721, 89 S.Ct. 2072), and the Court of Appeal found no reason a different result should obtain under the California Constitution. The court also noted that an increased restitution fine on resentencing did not involve any significant "embarrassment, expense, and anxiety" to the defendant. (See Monge, supra, 16 Cal.4th at p. 845, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
This analysis is flawed in several respects. First, as the Courts of Appeal in People v. Jones, supra, 24 Cal.App.4th 1780, 30 Cal.Rptr.2d 238, and People v. Thompson, supra, 61 Cal.App.4th 1269, 76 Cal.Rptr.2d 267, implicitly recognized, there is no rational distinction between fines and incarceration in this context. Both constitute punishment. The risk incurred by appealing an erroneous conviction attaches equally regardless of the form of punishment. The rationale of Henderson cannot preclude an increase in one instance without precluding an increase in the other. The fact we have not expressly addressed the issue does not alter the force of this logic.
Second, People v. Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465, notwithstanding, the lead opinion in Monge, supra, 16 Cal.4th 826, 66 Cal. Rptr.2d 853, 941 P.2d 1121, cannot be read to suggest this court intends a wholesale reevaluation of state double jeopardy principles. In Monge, the prosecution alleged the defendant had suffered a prior serious felony conviction and a prior prison term for assault with a deadly weapon. These allegations were tried to the court in a bifurcated proceeding at which the defendant contested whether the prior assault constituted a serious felony within the meaning of the three strikes law. (Id. at p. 830, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) After considering certain documentary evidence, the court found the prior conviction allegation true. (Id. at pp. 830-831, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) On appeal, the Court of Appeal determined insufficient evidence supported the trial court's finding and reversed. It further held federal and state double jeopardy protections precluded retrial on the allegation. (Id. at p. 831, 66 Cal.Rptr.2d 853, 941 P.2d 1121; cf. Bullington v. Missouri (1981) 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270.)
At that time, it remained an open question as to both this court and the United *65 States Supreme Court whether the trial of a prior conviction allegation implicated double jeopardy. (Monge, supra, 16 Cal.4th at p. 832, 66 Cal.Rptr.2d 853, 941 P.2d 1121; see Monge v. California (1998) 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615.) After anticipating that the federal Constitution would not bar retrial (Monge, supra, 16 Cal.4th at pp. 831-843, 66 Cal. Rptr.2d 853, 941 P.2d 1121), the lead opinion considered whether there were "`"cogent reasons"'" to interpret our state Constitution more broadly rather than adopt the federal rule. (Id. at p. 844, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) The reference must thus be understood as applying to this narrow, previously undecided, issue, not as a signal to reassess matters firmly settled under state constitutional law.
Third, the lead opinion in Monge expressly recognized and impliedly reaffirmed that "[t]he rule ... protecting defendants from receiving a greater sentence if reconvicted after a successful appeal [citations] is one instance where we have interpreted the state double jeopardy clause more broadly than the federal clause. [Citation.]" (Monge, supra, 16 Cal.4th at p. 844, 66 Cal.Rptr.2d 853, 941 P.2d 1121, citing Henderson, supra, 60 Cal.2d at pp. 495-497, 35 Cal.Rptr. 77, 386 P.2d 677; see People v. Hernandez, supra, 19 Cal.4th 835, 850, 80 Cal.Rptr.2d 754, 968 P.2d 465 (dis. opn. of Brown, J.) [citing Henderson as part of this court's "long history of independent interpretation" of the state double jeopardy clause].) For this reason as well, nothing in Monge gives license to jettison the reasoning of Henderson in circumstances where it plainly applies.
Finally, the degree to which a second proceeding might cause embarrassment, expense, or anxiety is irrelevant to determining whether resentencing triggers double jeopardy protection. Only when the court is considering whether a retrial is prohibited does it evaluate these factors. As discussed below, under California's Constitution the proper focus with respect to resentencing is whether increased punishment operates to penalize the defendant for exercising the right of appeal.
Adopting the Court of Appeal's reasoning, the Attorney General urges this court to conform state double jeopardy principles to the federal standard. Upon due consideration, we are unconvinced we should abandon Henderson, which articulates reasons that remain sufficiently cogent to sustain our independent interpretation of California law: "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (Henderson, supra, 60 Cal.2d at p. 497, 35 Cal.Rptr. 77, 386 P.2d 677.) We have consistently endorsed this reasoning "even though the United States Supreme Court has since determined that in general `the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction.' [Citation.] Although presented with both the opportunity to do so and subsequent clarification of federal constitutional law, the court has never retreated from the rationale or holding of Henderson." (People v. Superior Court (Hams) (1990) 217 Cal.App.3d 1332, 1337, 266 Cal.Rptr. 563; cf. Curry v. Superior Court (1970) 2 Cal.3d 707, 715-716, 87 Cal.Rptr. 361, 470 P.2d 345 [declining to reconsider earlier decision rejecting federal rule that granting mistrial without defendant's consent does not place him in jeopardy, and following contrary "uniform construction" of California Constitution].)
In Pearce, supra, 393 U.S. 711, the United States Supreme Court applied the "slate wiped clean" theory of double jeopardy to resentencing after a successful appeal. (395 U.S. at p. 721, 89 S.Ct. 2072.) This theory derived from United States v. Ball (1896) 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 and its progeny, cases in which the defendants had asserted double jeopardy *66 against retrial after reversal on appeal. The high court rejected the plea in large measure for policy reasons: "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." (United States v. Tateo (1964) 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448.)
These concerns are not implicated in resentencing. The defendant receives no immunity from punishment; society is simply limited to exacting the penalty previously imposed. Nor does the reasoning adequately account for the penalty the federal rule attaches to exercising a defendant's right of appeal. The court in Pearce attempted to provide a modicum of protection against improper resentencing by cautioning that "[d]ue process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (Pearce, supra, 395 U.S. at p. 725, 89 S.Ct. 2072.) In our view, vindictiveness is only one of the evils the rule in Henderson forestalls. More basically, it is the chilling effect on the right to appeal generated by the risk of a more severe punishment that lies at its core. (People v. Collins, supra, 21 Cal.3d at p. 216, 145 Cal.Rptr. 686, 577 P.2d 1026; see State v. Turner (1967) 247 Or. 301, 429 P.2d 565; see also Green v. United States, supra, 355 U.S. at pp. 193-194, 78 S.Ct. 221; see generally, Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant (1965) 74 Yale L.J. 606.) Moreover, as the Supreme Court itself acknowledged: "The existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case." (Pearce, at p. 725, fn. 20, 89 S.Ct. 2072.)
For the foregoing reasons, even if we were to find our state double jeopardy clause does not compel the holding in Henderson, we would not hesitate to enforce the same rule on alternate state due process grounds. The Alaska Supreme Court reached this conclusion in Shagloak v. State (Alaska 1979) 597 P.2d 142. (Cf. State v. Holmes (1968) 281 Minn. 294, 161 N.W.2d 650, 654 [precluding increased penalty on resentencing based on "procedural fairness and principles of public policy rather than on a constitutional ground"]; State v. Wolf (1966) 46 N.J. 301, 216 A.2d 586 [same under New Jersey law]; State v. Turner, supra, 429 P.2d at pp. 570-571 [same under Oregon law].) Translating the rationale of Henderson into due process terms, the court in Shagloak explained that "if a more severe sentence may be imposed after retrial for any reason, there will always be a definite apprehension on the part of the accused that a heavier sentence may be imposed.... Such deterrence violates the due process clause of the Alaska Constitution. The fundamental standard of procedural fairness, which is the basic due process right claimed in this case, forbids placing a limitation on the defendant's right to a fair trial by requiring a defendant to barter with freedom for the opportunity of exercising it. [Citation.] The state has no valid interest in imposing unreasonable conditions on [a defendant's] *67 legitimate exercise of his due process right." (Shagloak v. State, supra, 597 P.2d at p. 145, fns. omitted.) We would be loathe to construe California's due process right to procedural fairness any more narrowly even if we were to conform to federal double jeopardy standards.
The Attorney General finally contends that the trial court on remand did not violate the rale in Henderson because although defendant's fine increased by $9,000, he is now eligible for parole; therefore, his aggregate sentence was not increased. (See, e.g., People v. Savala (1983) 147 Cal.App.3d 63, 67-70, 195 Cal. Rptr. 193, disapproved on other grounds in People v. Foley (1985) 170 Cal.App.3d 1039, 1044, 216 Cal.Rptr. 865; see also People v. Craig (1998) 66 Cal.App.4th 1444, 1452, 78 Cal.Rptr.2d 659.) At the very least, the metaphysical premises of this argument counsel against adopting it. Instead, we are persuaded by the sensible rule formulated in People v. Craig, supra, 66 Cal.App.4th at page 1449, 78 Cal. Rptr.2d 659, "that when a sentence is a mix of time and money each must be measured against like components of the earlier sentence for the purposes of determining whether the aggregate sentence has been increased." (See People v. Jones, supra, 24 Cal.App.4th at pp. 1784-1785, 30 Cal.Rptr.2d 238.) Any other approach would depend to an unacceptable degree on the subjective assessments of trial and appellate courts.

DISPOSITION
The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.
GEORGE, C.J., MOSK, J., KENNARD, J., BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
NOTES
[1] The federal constitutional guarantee against double jeopardy did not at that time apply to the states. (See Palko v. Connecticut (1937) 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, overruled in Benton v. Maryland (1969) 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707.)
[2] The rule is otherwise when a defendant seeks to withdraw a guilty plea or repudiate a plea bargain. (See People v. Superior Court (Garcia) (1982) 131 Cal.App.3d 256, 258-260, 182 Cal.Rptr. 426; see also People v. Serrato (1973) 9 Cal.3d 753, 765, 109 Cal Rptr. 65, 512 P.2d 289 [declining to apply Henderson "where a conviction based upon a negotiated guilty plea is set aside because of the trial court's failure to obtain constitutionally required waivers"] disapproved on other grounds in People v. Fosselman (1983) 33 Cal.3d 572, 583, fn. 1, 189 Cal.Rptr. 855, 659 P.2d 1144.)
[3] A principal exception to application of Henderson arises "when a trial court pronounces an unauthorized sentence. Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (People v. Serrato, supra, 9 Cal.3d at p. 764, 109 Cal.Rptr. 65, 512 P.2d 289, fn. omitted.) There appears no argument that defendant's original $1,000 fine was unauthorized; thus, we have no basis for invoking the exception on these facts.
[4] These factors include "(1) `[w]hether the sanction involves an affirmative disability or restraint'; (2) `whether it has historically been regarded as a punishment'; (3) `whether it comes into play only on a finding of scienter'; (4) `whether its operation will promote the traditional aims of punishmentretribution and deterrence'; (5) `whether the behavior to which it applies is already a crime'; (6) `whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) `whether it appears excessive in relation to the alternative purpose assigned.'" (Hudson, supra, 522 U.S. at pp. 99-100, 118 S.Ct. 488.)
[5] Thornton concerned whether a defendant who had originally been granted probation could be denied probation on resentencing after a successful appeal. The Court of Appeal concluded that "[s]ince our Supreme Court has not spoken on the subject of probation at retrial, we feel free to apply the analogy of Pearce[, supra. 395 U.S. 711, 89 S.Ct. 2072,] to such cases [rather than the reasoning of Henderson]." (People v. Thornton, supra, 14 Cal.App.3d at p. 327, 92 Cal.Rptr. 327.) We express no opinion as to the soundness of this conclusion.