POCHÉ, J.*
I respectfully dissent. In my view the legislative genesis of restitution fines and victim restitution does not permit the conclusion reached by the majority, to wit; that the Legislature expressly or impliedly indicated a preference that victim restitution is a civil punishment. Nor can I subscribe to the view that the statutory scheme is not so punitive in purpose and effect that, whatever indication the punishment may have been intended as civil, it operates as a criminal penalty. (People v. Hanson (2000) 23 Cal.4th 355, 361 [97 Cal.Rptr.2d 58, 1 P.3d 650].)
The appropriate analysis as set out by our Supreme Court is to look first to the Legislature’s characterization of the punishment. (People v. Hanson, supra, 23 Cal.4th at p. 361; Hudson v. United States (1997) 522 U.S. 93, 99-100 [118 S.Ct. 488, 493, 139 L.Ed.2d 450, 162 A.L.R. Fed. 737].) As the Hanson court noted, the provisions for both types of restitution are now encompassed in Penal Code section 1202.4, having been moved there in 1994 from the Government Code. (Stats. 1994, ch. 1106, § 3.) Although victim restitution was first imposed on this defendant only by an order of July 1999, the court applied the version of the statute, then Government' Code former section 13967[1] which was in effect in the summer of 1993 when defendant committed his crimes.
*655 The Legislature’s intent underlying the restitution scheme, as made express in 1994, is that “ ‘all persons who suffer losses as a result of criminal activity’” shall receive restitution for their losses. (Stats. 1994, ch. 1106, §1.)
Restitution directly from a defendant is premised upon the defendant’s conviction, and it is measured by the amount of the victim’s loss, absent “compelling and extraordinary reasons” to reduce it. (Pen. Code, § 1202.4, subds. (a)(1) & (f); see Gov. Code, former § 13967, subd. (c).)
Both the language of the statute and the legislative findings made in 1994 speak broadly of “restitution,” when describing both restitution fines and victim restitution. Accordingly the legislative findings describe restitution as having both “a rehabilitative effect on criminals” and as acting as “a deterrent to future criminality.” (Stats. 1994, ch. 1106, § 1.) Similarly the statute directs that the “court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both” types of restitution. (Pen. Code, § 1202.4, subd. (a)(3); see Gov. Code, former § 13967, subd. (a).)
Victim restitution in 1993 could be imposed as an alternative to “all or a portion of the restitution fine.” (Gov. Code, former § 13967, subd. (c).) Thus at the time defendant committed his crimes the statutory scheme both described and treated victim restitution and restitution fines as so closely related as to be interchangeable penalties.
Set against these indicia of legislative intent to treat victim restitution as a criminal penalty analogous to a restitution fine, a victim restitution order has been characterized consistently as enforceable as if it were a civil judgment. (Gov. Code, former § 13967, subd. (c); Pen. Code, § 1202.4.)
Therefore, the Legislature may not have intended victim restitution to be a criminal punishment. Because I find there to be some doubt I reach the second level of inquiry—whether the statutory scheme is so punitive either in purpose or effect as to transform what was intended to be a civil remedy into a criminal penalty. (People v. Hanson, supra, 23 Cal.4th at p. 361; Hudson v. United States, supra, 522 U.S. 93, 99 [118 S.Ct. 488, 493].)
*656 The punitive purpose of restitution was made express by the legislative findings cited above which characterize it as operating as a deterrent and as having a “rehabilitative effect.” Moreover, victim restitution, like a restitution fine, is only imposed upon conviction of a crime.
Securing the right to restitution for persons who suffer loss as a result of criminal activity is also one of the legislative purposes for victim restitution. Thus providing compensation for victim loss is an alternative, and potentially nonpunitive purpose of restitution. However, as the majority notes, this measure of loss results in an order for an extremely large sum in victim restitution; the majority points to one case in which it amounted to $1 million or “more than 100 times the maximum” possible restitution fine. (Maj. opn., ante, at p. 648.) By establishing a measure based solely on what has become an ever-expanded definition of victim loss (see Stats. 1996, ch. 629, § 3, adding subd. (f)(3)(F) & (G)), however, the statute permits on its face restitution which may well exceed in scope and scale damages which would otherwise be available to the victim were he or she to seek redress in a separate civil suit against the defendant.
While the majority opinion asserts that only economic loss forms the basis for victim restitution, the statute on its face does not so provide. For example, victim restitution for noneconomic loss, such as psychological harm, has long been available from a defendant convicted of lewd acts committed against a child. (Gov. Code, former § 13967, subd. (c); Pen. Code, § 1202.4, subd. (f)(3)(F).)
In sum, viewing the provisions of Penal Code section 1202.4 against the factors enumerated in Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144, 168-169 [83 S.Ct. 554, 567-568, 9 L.Ed.2d 644], as relevant to the inquiry, I conclude that victim restitution under Penal Code section 1202.4 is both so punitive in purpose and effect as to render it a criminal punishment.
In light of that finding I must further conclude that the increase in the victim restitution here, from zero to an amount totaling some $36,000 offends the double jeopardy provisions of our state Constitution under the rule announced in People v. Henderson (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677]. Here defendant having successfully appealed from his conviction for second degree murder, and the People having elected not to retry that charge, finds himself subject to a restitution award to the families of both victims, when at his initial sentencing no award was made to either family. It can scarcely be denied that permitting a restitution award of over $36,000 at resentencing when no restitution award was made initially is not a significant disincentive, indeed penalty, for having taken a successful *657 appeal. The focus of double jeopardy protection under our state Constitution is whether increased punishment on resentencing “operates to penalize the defendant” for having exercised his right to appeal. (People v. Hanson, supra, 23 Cal.4th at p. 365.)
As our Supreme Court in Hanson concluded, the chilling effect upon a defendant’s right of appeal which arises from the possibility of greater punishment at resentencing implicates both the state constitutional protections against double jeopardy protections and state constitutional due process guarantees. (People v. Hanson, supra, 23 Cal.4th at p. 366.)
Insofar as I find the imposition of victim restitution to be punitive, I can only question whether California’s procedure of permitting a punitive sanction, whose upper limit is not defined by statute but by the extent of the victim’s loss ascertained in a proceeding which is conducted with the barest of evidentiary and procedural formalities, can be squared with the due process provisions of our federal Constitution. (See Apprendi v. New Jersey (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] [statute permitting finding of racial bias as justification for sentence enhancement was infirm where the finding was not made by a jury under reasonable doubt standard].)
Regardless of the facial constitutionality of the victim restitution scheme, the manner in which it was applied to this defendant raises significant due process concerns. At defendant’s original sentencing in December 1994 no victim restitution was ordered. As of mid-February 1995 the mother of Michael Gialouris had requested restitution in the amount of $5,500 and a pretrial conference was scheduled for March 9, 1995. On March 28, 1995, the district attorney sent a letter to the attorney of the Vigil family notifying them of a proposed restitution hearing and informing them that were it to be held defendant would be brought from prison to local custody which would permit defendant visitation with his family. At the 1999 sentencing the Vigil family denied ever learning about a restitution hearing from their attorney.
Based upon this inconclusive explanation about why no restitution hearing had been had in the months immediately following defendant’s first sentencing, the trial court concluded that there was no express statute of limitations as to victim restitution and, noting its statutory obligation to impose restitution, ordered victim restitution for the first time at the 1999 sentencing.
Several points are clear from the record: first, on this record the People did not affirmatively waive victim restitution in 1994; second, in 1995 the Vigil family may either have elected not to pursue victim restitution in light *658 of its civil suit against defendant and the other young men involved in the death of Joel Vigil, or because the family wished to deny defendant an opportunity to be brought back from state prison, or the family may not have been informed of its right to obtain restitution through failures attributable to it’s attorney. Still, the question is not, to my mind, whether either the Vigil family or the People should or should not be bound by principles of waiver, estoppel, or laches.
The issue before us is whether on these facts defendant was denied procedural due process. The dollar effect of waiting until 1999 to impose a victim restitution order of $36,000 was considerable. The trial court calculated the loss of child support from July 1994 to the month of its order, July 1999, or a period of 60 months at $386 per month yielding a total of $23,160. Had defendant been promptly given a restitution hearing—say in March or April of 1995—the amount of restitution for child support would literally have been in the range of $3,000 rather than $23,000. Accordingly, I would reverse that portion of the restitution ordered for child support attributable to the months of May 1995 through July 1999.
The majority opinion suggests that any error in the child support award was invited in light of defense counsel’s suggesting that the court should take judicial notice of the support order. I note that when defense counsel made that suggestion no document was before the court, other than a pay stub presented by the Vigil family, from which the amount of the victim’s court ordered child support could be verified. Accordingly, I think it misreads the scope of the defense suggestion to assume that counsel was doing anything more than urging judicial notice of the amount of Vigil’s child support obligation.
In sum, I find the victim restitution statute as applied to this defendant to violate principles of double jeopardy and due process. However, even if I were to accept the imposition of some $36,000 in victim restitution upon this defendant for the first time at resentencing, I reject as inherently unfair the notion that the victim’s loss can be inflated by some $20,000 because the People waited for five years in which to bring the matter to hearing.
Appellant’s petition for review by the Supreme Court was denied February 28, 2001. Mosk, J., was of the opinion that the petition be granted.

Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Government Code former section 13967, subdivision (c) provided in pertinent part: “In cases in which a victim has suffered economic loss as a result of the defendant’s criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. If a defendant has been convicted of a felony violation of Section 288 of the Penal Code, restitution to the victim may be ordered whether or not the defendant is denied probation. . . . [Restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . . Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted. HD Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic *655 losses incurred as the result of the defendant’s criminal conduct. If the conviction is for felony violation of Section 288 of the Penal Code, the court may also order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm, For any order of restitution made pursuant to this subdivision, the defendant shall have the right to a hearing before the judge to dispute the determination made regarding the amount of restitution.” All subsequent statutory references to former section 13967 of the Government Code are to this version.