[Nos. D055655, D056092. Fourth Dist., Div. One. Jan. 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
EXODUS BOLTON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*The opinion filed on January 20, 2011, is ordered certified for publication of parts I., II., and III.D. and IV. only.

**COUNSEL**

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Angela M. Borzachillo, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Defendant Exodus Bolton appeals from a judgment of conviction and sentence. A jury found Bolton guilty of assault with a deadly weapon and with force likely to cause great bodily injury, mayhem, making a criminal threat, resisting an officer, and two counts of battery.[1] Bolton committed the offenses in two separate incidents while riding the trolley.

On appeal, Bolton contends that the trial court abused its discretion in denying his motion to sever trial of the charges arising out of the two incidents, which occurred three days apart. Bolton also contends that the trial court erred in failing to instruct the jury sua sponte on the crime of battery with serious bodily injury as a lesser included offense of mayhem. Bolton further argues that the trial court abused its discretion in denying his motion to strike one or more of his prison prior convictions. Finally, Bolton contends that the trial court erred in imposing a lengthier sentence on retrial after his successful appeal.

We find no merit to Bolton's contentions, and therefore affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

 1. *The prosecution's case*

On October 14, 2006, 18-year-old Christian Munoz and his friend, April De La Torre, boarded a trolley in San Diego. De La Torre encouraged Munoz to sit across from her in an empty seat that was next to a seat in which a

---

[1] This was Bolton's second trial on these charges. Bolton was convicted on all but one of these same charges in an earlier trial. This court reversed his convictions in *People v. Bolton* (2008) 166 Cal.App.4th 343 [82 Cal.Rptr.3d 671] on the ground that the trial court violated Bolton's right to counsel when the court effectively forced Bolton to choose between his right to a speedy trial and his right to counsel.

woman was sitting. Munoz sat down next to the woman. After Munoz sat down, Bolton approached Munoz and pushed him off of the seat, yelling, "Don't be sitting next to my fucking wife. She's mine. We just got married." Bolton came within inches of Munoz's face and made statements that suggested that Bolton was in a gang. Bolton also told Munoz that he "handles business," and said something to the effect that he "takes lives and souls." Munoz was frightened and thought that Bolton was going to kill him.

During the confrontation with Munoz, Bolton displayed a knife and then handed the knife to his companion, Candice Foxworthy. Bolton told Foxworthy to "handle" Munoz and De La Torre. Foxworthy approached Munoz and De La Torre and began to repeatedly ask them whether they had a problem. They responded that they did not have a problem. Bolton got up and slapped Munoz three times in the face. Munoz and De La Torre got off the trolley at the next stop and reported the incident to police. Ten days later, during a photographic lineup, Munoz identified Bolton as the person who had hit him on the trolley.

On October 17, 2006, just a few days after the incident involving Munoz, Reyedward Harris boarded the trolley after school and saw Bolton arguing with another man. Bolton was yelling at the other man, calling him a "faggot" and a "bitch," and making a comment to the effect that "faggots hit girls." The other man eventually got off the trolley and appeared to challenge Bolton to get off the trolley and fight. Bolton remained on the trolley.

Harris was offended by what Bolton had been saying. Harris said to Bolton, "Gays don't hit girls, assholes do." Bolton told Harris to mind his own business. Bolton then spat on Harris and punched him as many as six times. Because Harris was cornered and could not escape, he huddled on the stairs of the trolley and tried to block the blows.

Victor Mendoza witnessed this entire incident, including Bolton's interaction with the man who had gotten off the trolley. Mendoza jumped up and went to Harris's aid. Mendoza pushed Bolton down onto the seats, which allowed Harris the opportunity to escape to the back of the trolley. Mendoza and Bolton then began sparring. Bolton pulled out a knife and stabbed Mendoza in the chest. Mendoza began kicking at Bolton in an attempt to avoid being stabbed again. After Bolton backed off, Mendoza noticed that he had been cut on his lower left arm and was bleeding profusely.

At the next stop, Bolton and Foxworthy got off the trolley and ran. Harris went to assist Mendoza.

Police detained Bolton and Foxworthy a few blocks away from the trolley stop where they had gotten off. Witnesses who had been on the trolley,

including Harris, identified Bolton and Foxworthy as having been involved in the incident with Mendoza. Bolton had blood on his hands, jeans and face. Police recovered a knife from Bolton's pocket.

Bolton was combative with police while they were conducting curbside identifications, and he refused to comply with their orders. One officer's finger was cut in a struggle with Bolton. Bolton had to be restrained. Even after he was restrained and placed in a police car, Bolton tried to spit at the officers and was verbally abusive toward them.

Mendoza did not realize how badly he was injured until after the police and an ambulance arrived. He sustained a stab wound to his chest and two stab wounds to his arm, one of which severed a nerve. Mendoza was unable to "hold [his] wrist up" at all for a year after the incident. After a year, he could hold his wrist up, but he still could not use his hand for anything other than to balance something heavy. His hand was numb and he had only limited movement in his fingers.

A number of witnesses who had been on the trolley testified that they saw Bolton spit on Harris and hit him. They also saw Mendoza come to Harris's aid and push Bolton. The witnesses watched as Bolton pulled out a knife and stabbed Mendoza.

### 2. The defense

Bolton testified on his own behalf. Bolton said that he and his girlfriend, Foxworthy, had come to San Diego from Kansas City, Missouri, to visit his mother. With respect to the October 14 incident, Bolton said that he and Foxworthy were on the trolley when Bolton got out of his seat to shake a friend's hand. While Bolton was up from his seat, Munoz took the seat. Bolton told Munoz that he wanted his seat back, and Munoz replied that he was a "black belt." Munoz stood up "halfway" and Bolton moved in behind him and took the seat. According to Bolton, Munoz and De La Torre made some remarks to Bolton, but Bolton claimed that he never threatened them. According to Bolton, it was "basically a nothing incident."

With regard to the second incident, Bolton claimed that a man "brushed" Foxworthy's shoulder, and Foxworthy said, "Excuse you." The man replied, "Excuse what?" Bolton and the man then began to argue. Harris approached Bolton, called Bolton an "asshole," and told Bolton that he did not like what Bolton had been saying to the other man. Bolton told Harris to "have some respect for [his] elders." According to Bolton, Harris pushed Bolton. Bolton admitted that he "[p]robably did pop [Harris] on his head."

Bolton testified that Mendoza jumped up and pushed Bolton down onto Foxworthy. Bolton believed that Mendoza was on drugs at the time. Bolton

claimed that Mendoza had a knife, and that Mendoza cut Bolton's finger with his knife. Bolton pulled out the knife that he used at his construction job and tried to get Mendoza to back off. According to Bolton, he pulled out his knife in order to protect himself and Foxworthy.

## B. *Procedural background*

On December 1, 2006, Bolton was charged by information with assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1) (count 1)); mayhem (§ 203 (count 2)); making a criminal threat (§ 422 (count 3)); two counts of battery (§ 242 (counts 4 & 6)); and resisting an officer (§ 148, subd. (a)(1) (count 5)). With regard to count 1, the information also alleged that Bolton personally used a deadly weapon (§ 1192.7, subd. (c)) and personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)). With regard to count 2, the information alleged that Bolton personally used a deadly weapon (§ 12022, subd. (b)(1)). The information further alleged that Bolton had served three prison sentences within the meaning of sections 667.5, subdivision (b) and 668.

After the first trial, a jury found Bolton guilty on counts 1, 2, 4, 5, and 6 and found true the enhancement allegations corresponding to counts 1 and 2. The jury could not reach a unanimous verdict on count 3. The trial court found that Bolton had served three prior prison terms.

This court reversed Bolton's convictions in *People v. Bolton, supra*, 166 Cal.App.4th 343 on the ground that the trial court violated Bolton's right to counsel when the court effectively forced Bolton to choose between his right to a speedy trial and his right to counsel. (*Id.* at pp. 361–362.)

A second trial commenced on May 28, 2009. On June 4, 2009, the second jury found Bolton guilty on all of the charges, and also found true the enhancement allegations that Bolton personally used a deadly weapon (counts 1 & 2) and personally inflicted great bodily injury (count 1).

On August 17, 2009, the trial court sentenced Bolton to nine years eight months in state prison. Bolton filed a notice of appeal the same day.

---

[2] Further statutory references are to the Penal Code unless otherwise specified.

## III.

## DISCUSSION

A.–C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D. *The trial court did not err in imposing a sentence on count 3*

Bolton contends that the trial court "erred by denying appellant's repeated objections to being subjected to an increased sentence at retrial following reversal of the judgment of conviction in his first trial on appeal because imposition of the more severe nine year eight-month sentence at retrial violated appellant's California State constitutional rights."

In Bolton's first trial, the jury could not agree on a verdict as to count 3, i.e., making a criminal threat. As a result, the trial court dismissed count 3 and proceeded to pronounce judgment in that case. On remand and prior to his second trial, Bolton moved the trial court to preclude retrial on count 3. The trial court denied the motion, and concluded that retrial on all of the original counts was permissible. The second jury convicted Bolton on count 3. The trial court sentenced Bolton to the same terms as it had in the first case on counts 1, 2, 4, 5 and 6. The court also imposed an eight-month sentence on count 3. As a result of the sentence imposed on count 3, Bolton's sentence after his successful appeal and retrial is eight months longer than the sentence that the court imposed after his first trial. Bolton argues that "the trial court's imposition of an additional eight months sentence for appellant's conviction of count three violated the Due Process and Double Jeopardy Clauses of the California Constitution because this increased appellant's sentence to more than the sentence he was given at the end of his first trial."

 "When a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing. [Citation.]" (*People v. Hanson* (2000) 23 Cal.4th 355, 357 [97 Cal.Rptr.2d 58, 1 P.3d 650].) The California Constitution provides greater protection in this respect than the federal Constitution: " '[T]he rule . . . protecting defendants from receiving a greater sentence if reconvicted after a successful appeal [citations] is one instance where we have interpreted the state double jeopardy clause more broadly than the federal clause. [Citation.]' [Citations.]" (23 Cal.4th at p. 364.)

---

*See footnote, *ante*, page 541.

As the People point out, upon remand, the prosecutor had the discretion to retry Bolton on count 3. Bolton appears to concede that the People were entitled to retry him on count 3, and does not challenge his conviction on that count. He contends, however, that due process and double jeopardy principles require that his sentence after a successful appeal cannot be greater than the sentence that he received prior to appeal, regardless of whether he was convicted of an additional offense in the second trial.[3] We disagree with this contention.

If the prosecutor had tried Bolton on count 3 in a proceeding separate from a trial on the other charges, Bolton could have been convicted *and sentenced* on count 3 in that separate case. Here, the prosecutor combined the retrial of count 3 (which was retried after a jury was unable to reach a unanimous verdict on that count, and not the result of a reversal on appeal), with the retrial of the charges on which Bolton had originally been convicted (a retrial that *did* result from appellate reversal). The trial court was prohibited by principles of double jeopardy from imposing a greater sentence *with respect to the charges of which Bolton was first convicted* and from which he successfully appealed. As to those counts (i.e., counts 1, 2, 4, 5 & 6), the trial court did not impose a greater sentence on remand. Rather, the court imposed the same sentences on those counts. However, the court also imposed an additional sentence on count 3—a count on which Bolton was not convicted in the first trial, and as to which Bolton was potentially subject to retrial regardless of the outcome of his prior appeal. The fact that the court imposed a sentence on count 3 after Bolton successfully appealed his convictions on the other counts does not mean that the additional sentence violates the California Constitution's principles of double jeopardy.

The People aptly observe that if this court were to agree with Bolton's argument, prosecutors would be discouraged from accepting dismissal of counts on which a jury has been unable to reach a verdict. Instead, prosecutors would be inclined to retry counts on which a jury has hung. In addition, this rule would create a situation in which defendants would receive a windfall after a successful appeal, in that they would not only receive a

---

[3] Recently, another appellate court was confronted with a situation similar to the one that occurred in this case, i.e., the defendant was retried and convicted on a count that the prosecutor had previously dismissed, after the defendant successfully appealed his conviction on another count. (See *People v. Puentes* (2010) 190 Cal.App.4th 1480 [119 Cal.Rptr.3d 67].) In *Puentes*, the Sixth District Court of Appeal reversed the defendant's conviction on the previously dismissed count, on the ground that the prosecutor's decision to reinstate the charge against the defendant constituted vindictive prosecution. (*Id.* at pp. 1488–1489.) The defendant in *Puentes* raised a vindictive prosecution claim both in the trial court and on appeal. (*Id.* at pp. 1482, 1484.) Bolton did not challenge his prosecution on count 3 as vindictive in the trial court, nor has he raised this argument on appeal. Because Bolton has not raised a claim of vindictive prosecution, the holding in *Puentes* does not apply to this case.

second chance at acquittal on the charges of which they were convicted, but would also avoid any additional sentence for charges as to which the first jury could not reach a verdict.

We see no reason to create the rule that Bolton urges. There is nothing patently unfair about returning a defendant to the same position that he was in prior to his first trial. When a new sentence is based on additional criminal convictions that were not at issue in the successful appeal and on which the defendant could have been retried without violating double jeopardy, the goals of precluding vindictiveness and not penalizing a defendant for pursuing a successful appeal are not implicated as they would be in the usual case (i.e., retrial on *only* the same counts on which the defendant was convicted and successfully appealed).

Bolton argues that *People v. Collins* (1978) 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026] (*Collins*) supports his position. In *Collins*, the defendant was charged with 15 separate felony counts and entered into a plea bargain pursuant to which he agreed to plead guilty to one count of oral copulation and the prosecution agreed to dismiss the remaining counts. After suspending criminal proceedings, the court found the defendant to be a mentally disordered sex offender and committed him to a state hospital for an indefinite period. Shortly thereafter, the Legislature decriminalized the conduct underlying Collins's plea. (*Id.* at p. 211.) Upon reinstatement of criminal proceedings, Collins objected to the court's jurisdiction to sentence him under the repealed statute.

The Supreme Court agreed with Collins that he could not be sentenced under the repealed statute, and reversed his conviction with directions to dismiss the count in question. (*Collins, supra*, 21 Cal.3d at p. 214.) Given the circumstances, the Supreme Court did not foreclose reinstatement of any or all of the other 14 charges, but did limit the potential range of punishment to which Collins could be subjected if he were convicted on those charges. (*Id.* at p. 216.) The court reasoned, "[W]e must fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled. [¶] This may best be effected by permitting the state to revive one or more of the dismissed counts, but limiting defendant's potential sentence to not more than three years in state prison, the term of punishment set by the Community Release Board pursuant to the determinate sentencing act [citation]." (*Ibid.*)

In support of this determination, the Supreme Court cited "a line of cases based on principles of double jeopardy" in which the court's concerns were "specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Collins, supra*, 21 Cal.3d at

p. 216.) The Supreme Court concluded that Collins "should not be penalized for properly invoking [precedent] to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain." (*Id.* at p. 217.)

The fact that Collins was originally convicted and sentenced pursuant to a plea bargain, and that reversal of his conviction on the lone count to which he pleaded guilty without allowing retrial on one or more of the dismissed counts would result in an unfair windfall to him, was central to the Supreme Court's decision. The Supreme Court explained:

"The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. We recognized this in the above quoted passage from *People* v. *Orin* (1975) . . . 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193], and in *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409], when we first gave explicit approval to the process of plea bargaining: 'Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a *lessened punishment* does not need elaboration . . . .' (Italics added.) When a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it is his escape from vulnerability to sentence that fundamentally alters the character of the bargain.

"Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain—that defendant would be vulnerable to a term of imprisonment. . . . The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed." (*Collins, supra*, 21 Cal.3d at p. 215.)

The *Collins* court was also concerned that the defendant receive the benefit of his bargain. The court therefore attempted to "fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled." (*Collins, supra*, 21 Cal.3d at p. 216.) The court determined that the best remedy under the particular circumstances before it would be to "permit[] the state to revive one or more of the dismissed counts, but limit[] defendant's potential sentence to not more than three years in state prison, the term of punishment

set by the Community Release Board pursuant to the determinate sentencing act [citations]."[4] (21 Cal.3d at p. 216.)

The unique circumstances arising from the existence of a conviction obtained by a plea bargain, combined with the repeal of the statute at issue in the plea bargain, led directly to the result in *Collins*. *Collins* is inapposite, since none of those circumstances is present in this case. We therefore reject Bolton's contention that *Collins* provides support for his position that he may not be sentenced to a lengthier sentence after any successful appeal from any conviction, even if the additional sentence is based on a new conviction that was not at issue in the appeal.

IV.

DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 2011, S191492. Kennard, J., was of the opinion that the petition should be granted.

---

[4] The court also explained that because the parties could not bind the trial judge in imposing sentence, the benefit of the bargain to which Collins was entitled "relate[d] to defendant's vulnerability to sentence, not actual sentence imposed pursuant to the court's discretion." (*Collins, supra*, 21 Cal.3d at p. 216, fn. 4.)