Filed 4/8/14  P. v. Summers CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C073525 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF11-253) |
| v. | |
| DWIGHT ANTHONY SUMMERS, | |
| Defendant and Appellant. | |

A jury found defendant Dwight Anthony Summers guilty of grand theft (Pen. Code, § 487, subd. (a))[1] and not guilty of an alternative count of petty theft with three prior theft related convictions (§ 666, subd. (a)).  He was sentenced to prison for eight months (one-third the midterm of two years) consecutive to the sentence imposed in an unrelated case.  Defendant was awarded no credit for time served and was ordered to pay

---

[1]   Further statutory references are to the Penal Code unless otherwise indicated.

1

a $280 restitution fine (§ 1202.4, subd. (b)) and a $280 restitution fine suspended unless parole is revoked (§ 1202.45).

On appeal, defendant contends (1) his conviction is not supported by sufficient evidence, and (2) his restitution fines must be reduced to the statutory minimum of $200. We affirm.

FACTS

*Prosecution Case-in-Chief*

Paul Holck is the owner and manager of H & S Automotive in Marysville. Holck has known defendant for five or six years, having attended the same church. H & S Automotive has done quite a bit of work on defendant's car.

On a Saturday in April 2011, defendant appeared at H & S Automotive. He was "dirty" and "didn't look right." His eyes were glossy and his speech was not smooth. He said he needed to take a shower or wash himself off. Holck, the only other person at the shop, allowed defendant to use the bathroom.

Next to the bathroom was an unlocked storage container in which "a lot of [the shop's] good tools" are stored. Holck had been using tools from the container that day.

Holck testified that, when defendant used the bathroom, the storage container contained a brand new Solus Pro Scanner, which is "basically [a] little computer[]" that is "used to diagnose . . . engine codes" and had cost Holck "roughly $4,000." The container is where the scanner "is always kept."

On the Monday following defendant's Saturday visit, Holck discovered that the scanner was missing. There were no signs of forced entry into the shop. The shop's alarm did not sound, and no one entered a code to deactivate the alarm. Aside from defendant and Holck, only Holck's technician and secretary had access to the garage area.

2

When he realized the scanner was missing, Holck contacted his Snap-on Tools representative, John Balkowitsch, and told him what had happened. Holck's secretary contacted the police.

In April 2011, defendant attempted to sell a scanner identical to the one taken from Holck's shop to another auto shop, managed by Lucio Daniel Alire, for $500. Alire, suspicious of the inordinately low price, refused. Alire viewed photographs of the stolen scanner and testified that he believed they depicted the kind of scanner defendant had offered to sell to him.

Balkowitsch sold Holck a replacement for the stolen scanner. Balkowitsch also became aware that the stolen scanner had appeared at another of his usual customers, Quality Alignment N Brake (hereafter Quality) in Yuba City. Balkowitsch examined the serial number on the scanner at Quality and determined that it was Holck's scanner.

Corporal Aaron Easton of the Marysville Police Department testified that in April 2011 Miguel Zuniga came to the police station and asked to talk about the recovery of a stolen automotive scanner. After Easton obtained the scanner from Zuniga, he submitted its serial number to his dispatcher who determined that it had been reported stolen from H & S Automotive in Marysville. The trial court sustained defense counsel's foundational objection to the prosecutor's question where Zuniga was "from;" thus, his relationship to Quality was not established.

*Defense*

The defense rested on the state of the evidence.

DISCUSSION

I

*Substantial Evidence*

Defendant contends his due process right was violated because his grand theft conviction is not supported by sufficient evidence. Specifically, he argues (1) there was insufficient evidence that the scanner was in the storage container when defendant was

3

present, (2) there was no evidence that his offer to sell Alire a scanner occurred after, rather than before, Holck's scanner was stolen, and (3) there was no evidence how Zuniga came into possession of the scanner. None of these points has merit.

Defendant was convicted of grand theft. (§ 487, subd. (a).) Theft "is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away. [Citations.]" (*People v. Davis* (1998) 19 Cal.4th 301, 305.)

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

This court has explained that an appellant "must *affirmatively demonstrate* that the evidence is insufficient," and that he "does not show the evidence is insufficient by . . . arguing about what evidence is *not* in the record." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573, original italics.) Defendant's argument fails because it is focused on evidence assertedly *not* in the record: evidence the scanner was in the storage container *while defendant was present*, evidence the theft of Holck's scanner preceded defendant's offer to sell Alire a scanner, and evidence that Zuniga obtained the scanner *from* defendant.

In any event, defendant's arguments have no merit. Holck's testimony that the scanner was present in the storage container next to the bathroom when defendant used the bathroom is sufficient to prove the fact of its presence at that time. (Evid. Code, §

4

411; see generally *People v. Cuevas* (1995) 12 Cal.4th 252, 262-263.) We reject defendant's speculation that "the scanner may have been taken a week or a month earlier."

Contrary to defendant's argument, the prosecution had no obligation to prove that defendant's interaction with Alire occurred after Holck's scanner was stolen. The evidence showed that the scanner was in Holck's shop and that defendant was one of the only persons with access to it. Holck testified that had no theft-related problems or concerns with respect to his technician or his secretary. Defendant enjoyed no similar reputation and had the time to achieve a theft; it took him "quite a while" to wash up in the bathroom. These facts, together with evidence that defendant tried to sell an identical scanner for a suspiciously low price, provide ample support for a jury determination that defendant stole the scanner from Holck.

Defendant further argues that the jury erred in finding that "Zuniga must not have stolen the scanner himself, and must have purchased the stolen scanner from" defendant. (Italics omitted.) We disagree.

The evidence showed that the scanner was in Holck's shop and that only he, his technician, his secretary, and defendant had access to it during the relevant time period -- not Zuniga. These facts, coupled with evidence that Zuniga turned the scanner over to authorities, are more than sufficient to allow the jury to conclude that Zuniga did not steal the scanner.

Moreover, it was not necessary for the People to establish that defendant sold the stolen scanner to Zuniga. That is not a required element of grand theft. (See *People v. Davis, supra,* 19 Cal.4th at p. 305.)

Defendant's reliance on *People v. Morris* (1988) 46 Cal.3d 1 (*Morris*), overruled on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5, is misplaced. *Morris* held that "[i]n the absence of any substantial evidence that the taking was accomplished either before or during the killing by means of force or fear, we must

5

conclude that the evidence will not support a conviction of robbery. Absent substantial proof of the robbery, the special circumstance finding of robbery-murder must fall. [Citations.]" (*Morris, supra,* at p. 21.)

Defendant claims *Morris* is similar to the present case for reasons we have discussed: because there was no evidence that the scanner was in the storage container when defendant was there, no evidence that the interaction between Alire and defendant took place after the Holck theft, and no evidence that defendant sold the stolen scanner to Zuniga; moreover, the evidence supports an inference that Zuniga stole the scanner from Holck. But as we have seen, there was ample evidence that the scanner was in the container at the time defendant had access to it; the timing of the Alire interaction is not determinative; and a sale from defendant to Zuniga is not an element of the offense. Finally, even if the evidence allows an inference that Zuniga stole the scanner, the jury had no obligation to draw the inference because there was abundant if not overwhelming contrary evidence. Defendant's reliance on *Morris* is misplaced.

In sum, defendant's grand theft conviction is supported by substantial evidence. (*People v. Boyer, supra,* 38 Cal.4th at pp. 479-480.)

II

*Restitution Fines*

Defendant contends "the $280 in restitution and parole [revocation] fines were not authorized by the controlling version of sections 1202.4 and 1202.45"; thus, the "fines should be reduced to $200, or the matter remanded." Defendant is wrong.

The probation report recommended restitution fines in the amount of $280, but did not characterize the amounts as "minimum" fines.

At sentencing in April 2013, defense counsel requested that the probation report be corrected on an unrelated point and submitted on the corrected report. The trial court remarked: "[Defendant] is ordered to pay a restitution fine of $280 in this case. The

6

second restitution fine is suspended. If you don't violate parole, you don't have to pay the second fine."

When defendant committed his offense in April 2011, restitution fines could range from a minimum of $200 to a maximum of $10,000. (Stats. 2010, ch. 351, § 9, eff. Sept. 27, 2010.) Contrary to defendant's argument, the trial court *could* lawfully impose $280 fines, simply by exercising its discretion in favor of fines that exceed the statutory minimum. Defendant's failure to object to the fines at sentencing forfeits his claim on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

In any event, defendant's contention has no merit. While the maximum fine has remained unchanged, the minimum fine was raised to $240 as of January 1, 2012; $280 as of January 1, 2013; and $300 as of January 1, 2014. (§ 1202.4, subd. (b)(1).)

Restitution fines are "punishment" for purposes of the ex post facto clauses. (*People v. Hanson* (2000) 23 Cal.4th 355, 360-361.) Defendant's argument proceeds from the undisputed premise that a trial court, having elected in its discretion to impose "minimum" restitution fines, cannot impose $280 fines for a 2011 offense without violating ex post facto principles.

But nothing in the record supports defendant's argument that the trial court elected to impose "minimum" restitution fines. The probation report, which recommended the $280 fines, did not characterize them as minimum or minimal; nor did it suggest that defendant lacked ability to pay more than the minimum amount. The report noted that defendant had been employed and had owned his own business. It also noted that, in March 2013, defendant had been sentenced to prison for 25 years.

At sentencing, defendant submitted on the corrected probation report, and the trial court did not characterize the $280 restitution fines in any way. Thus, nothing in the record supports defendant's speculation that the court intended to impose minimum restitution fines. The fact that $280 represents the minimum for offenses committed at

the time of sentencing in 2013 appears entirely coincidental.  No error is affirmatively shown.

DISPOSITION

The judgment is affirmed.


 NICHOLSON , Acting P. J.


We concur:


 ROBIE , J.


 DUARTE , J.