Filed 4/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERMAN FLORES,<br><br>    Defendant and Appellant. | F081903<br><br>(Super. Ct. No. BF177597A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

On September 20, 2019, defendant Jerman Flores was charged by information with one felony count of possession of a controlled substance for sale. (Health & Saf. Code, § 11378; count 1.) On October 21, 2020, pursuant to the terms of a plea bargain, the prosecutor amended the information to add one misdemeanor count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 2); defendant pled no contest to count 2; and the trial court dismissed count 1 and placed defendant on probation for a term of three years with 60 days in custody and credit for 20 days of time served. Defendant filed a timely notice of appeal.

Defendant raises one claim on appeal: entitlement to relief under Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950 or Assem. Bill 1950), effective January 1, 2021. Assembly Bill 1950 amended former Penal Code sections 1203a and 1203.1, subdivision (a),[1] to limit probation, respectively, to a period not to exceed one year in misdemeanor cases and two years in felony cases, subject to certain exceptions not applicable in this case. (Assem. Bill 1950, §§ 1–2.)[2] The parties agree that Assembly Bill 1950 is retroactive under *Estrada*[3] and that it applies in this case because defendant's judgment is not final. They disagree on remedy, however.

Defendant requests modification of his probation term on review to a term no greater than one year. The People's main contention is that remand is required to afford the prosecutor the opportunity to withdraw from the plea bargain or the trial court to rescind its approval, restore the felony charge, and allow the parties to renegotiate the

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Subsequently, Assembly Bill No. 177 effected changes to section 1203.1, provided for repeal of the section on January 1, 2022, and then added section 1203.1, effective January 1, 2022. (Legis. Counsel's Dig., Assem. Bill No. 177 (2021–2022 Reg. Sess.) Stats. 2021, ch. 257, §§ 21–22, pp. 28–35.) Those changes are not relevant to the issue raised in this appeal.

[3] *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

2.

plea bargain or proceed to trial, as provided for in *People v. Stamps* (2020) 9 Cal.5th 685, 707–708 (*Stamps*).

Based on the plain language and legislative intent underlying Assembly Bill 1950, we conclude that defendant is entitled to modification of his probation term from three years to one year on review. A contrary result would frustrate legislative intent and, as explained herein, the California Supreme Court's decision in *Stamps* is distinguishable. Therefore, the remedy approved there does not apply. We shall reduce defendant's term of probation to one year and otherwise affirm the judgment. (§ 1260.)

## DISCUSSION

### I.      Summary of Assembly Bill 1950

Defendant entered a plea of no contest to one misdemeanor count in 2020. At that time, section 1203a provided that the period of probation could not exceed three years, and that was the term imposed in this case. (Former § 1203a.) In his reply brief, defendant argues that the three-year probation period was not a negotiated term of the parties' plea bargain. However, defendant's trial counsel stated on the record that defendant would "enter a no contest plea to [count 2] for three years [of] summary probation, 60 days with a referral to the Work Release Program, fines and fees, and search terms and testing for narcotics," and the prosecutor concurred. As defendant's position is directly contradicted by the record, we reject his argument without need for further discussion.

Subsequent to defendant's plea and the imposition of probation, Assembly Bill 1950 amended section 1203a to provide:

> "(a)      In all counties and cities …, the courts therein, having jurisdiction to impose punishment in misdemeanor cases, may refer cases, demand reports, and to do and require anything necessary to carry out the purposes of Section 1203, insofar as that section applies to misdemeanors. The court may suspend the imposition or execution of the sentence and make and enforce the terms of probation for a period *not to exceed one year*.

"(b)     The one-year probation limit in subdivision (a) shall not apply to any offense that includes specific probation lengths within its provisions."  (Italics added.)

The parties agree that the exception set forth in subdivision (b) of section 1203a does not apply to defendant's conviction for drug possession under Health and Safety Code section 11377.  Therefore, we proceed to the issue of retroactivity, which is not in dispute, and the issue of remedy, which is in dispute.

## II.     Retroactivity

"'It is well settled that a new statute is presumed to operate prospectively'" (*Stamps, supra*, 9 Cal.5th at p. 698; accord, *People v. Frahs* (2020) 9 Cal.5th 618, 627–628 (*Frahs*)), and "[t]he Penal Code provides that '[n]o part of it is retroactive, unless expressly so declared'" (*Stamps, supra*, at p. 699, quoting § 3).  "However, this presumption is a canon of statutory interpretation rather than a constitutional mandate. [Citation.]  Accordingly, 'the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.'  [Citation.]  Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively." (*Frahs, supra*, at p. 627, citing & quoting *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307.)

Pursuant to *Estrada*, "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date."  (*People v. Gentile* (2020) 10 Cal.5th 830, 852, citing *Estrada, supra*, 63 Cal.2d at pp. 744–745; accord, *People v. Esquivel* (2021) 11 Cal.5th 671, 673 & 675–676; *Stamps, supra*, 9 Cal.5th at p. 699.)  "This presumption 'rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'"  (*People v. Gentile, supra*, at p. 852; accord, *People v. Esquivel*, *supra*, at p. 675; *Stamps, supra*, at p. 699.)

"The issue … [is] one of legislative intent.  (*Estrada, supra*, 63 Cal.2d at p. 744.)  'Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional.'  (*Ibid.*)  In the absence of such a declaration of intent, we identified 'one consideration of paramount importance' (*ibid.*): 'When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.  This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology.'  (*Id.* at p. 745.)  Under those theories, punishment is appropriate to deter, confine, and rehabilitate; '"[t]here is no place in the scheme for punishment for its own sake …."' (*Ibid.*)"  (*People v. Esquivel, supra*, 11 Cal.5th at p. 674, fn. omitted.)

This court and other appellate courts considering the issue have concluded, universally, that the change in the law under Assembly Bill 1950 is ameliorative and, therefore, applies retroactively in all cases not yet final on appeal. (*People v. Schulz* (2021) 66 Cal.App.5th 887, 895 (*Schulz*); accord, *People v. Butler* (2022) 75 Cal.App.5th 216, 220–221 (*Butler*); *People v. Scarano* (2022) 74 Cal.App.5th 993, 1003 (*Scarano*); *People v. Greeley* (2021) 70 Cal.App.5th 609, 627; *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095; *People v. Lord* (2021) 64 Cal.App.5th 241, 245; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1072–1073, review granted June 30, 2021, S268787 (*Stewart*); *People v. Sims* (2021) 59 Cal.App.5th 943, 960–961 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 881–882 (*Quinn*); *People v. Burton* (2020) 58 Cal.App.5th

Supp. 1, 14–16 (*Burton*); see *People v. Faial* (2022) 75 Cal.App.5th 738, 745, 746–747 [Assem. Bill No. 1950 applies retroactively to those serving a term of probation, but does not invalidate revocation & termination of probation that occurred prior to effective date of Assem. Bill No. 1950]; *Kuhnel v. Appellate Division of Superior Court* (2022) 75 Cal.App.5th 726, 729 & 732–733 [Assem. Bill No. 1950 applies retroactively to those serving ongoing term of probation, but does not deprive trial court of authority to adjudicate probation violation that occurred prior to effective date and resulted in revocation of probation].)  The People do not argue otherwise and given the absence of any dispute on this point, we proceed to the issue of remedy in plea-bargained cases.

## III.    Remedy

### A.    Background

The People argue, in effect, that notwithstanding undisputed retroactive application of Assembly Bill 1950 to all cases not yet final on review, defendant lacks entitlement to reduction of his probation term under the change in the law.  As stated in *Stamps*, "[t]he *Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively.  It does not answer the question of *how* that statute should be applied." (*Stamps, supra*, 9 Cal.5th at p. 700.)  The critical inquiry is one of legislative intent.  (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 991 (*Harris*).)  The People's argument for remand, and possibly withdrawal from the plea bargain, is based on the remedy advanced by this court in *People v. Ellis* (2019) 43 Cal.App.5th 925, 943–946 (*Ellis*) and subsequently approved by the California Supreme Court in *Stamps*. Application of that remedy in this case cannot be viewed in isolation from the California Supreme Court's decisions in *Harris* and *People v. Collins* (1978) 21 Cal.3d 208, 214–217 (*Collins*).  Therefore, we first summarize the principles underlying plea bargains and the high court's relevant decisions in *Collins*, *Harris*, and *Stamps*.

6.

### 1. Plea Bargains

"'The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged, either in degree [citations] or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information.… But implicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them.'" (*Stamps, supra*, 9 Cal.5th at p. 705, quoting *People v. Orin* (1975) 13 Cal.3d 937, 942–943; accord, *People v. Clancey* (2013) 56 Cal.4th 562, 569–570; *People v. Segura* (2008) 44 Cal.4th 921, 929–930.)

"'Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.'" (*Stamps, supra*, 9 Cal.5th at p. 705, quoting *People v. Orin, supra*, 13 Cal.3d at pp. 942–943; accord, *People v. Clancey, supra*, 56 Cal.4th at p. 570; *People v. Segura, supra*, 44 Cal.4th at p. 930.) As provided in section 1192.5, "[t]he statutory scheme contemplates that a court may initially indicate its approval of an agreement at the time of the plea" *(Stamps, supra*, at p. 705), but "up until sentencing" (*id.* at p. 706), retains "'broad discretion to withdraw its

prior approval of a negotiated plea'" (*ibid.*, quoting *People v. Johnson* (1974) 10 Cal.3d 868, 873)).[4]

### 2. *Collins*

In *Collins*, the California Supreme Court considered the appropriate remedy in a case that was resolved by plea bargain, but, prior to sentencing, the Legislature decriminalized the conduct to which the defendant pled, undermining the basis for the parties' bargain. (*Collins, supra*, 21 Cal.3d at p. 213.) The defendant in *Collins* was charged with 15 felony offenses, including three counts of forcible oral copulation in violation of former section 288a, with one prior felony conviction allegation. (*Collins, supra*, at p. 211.) He pled guilty to a single count of oral copulation under former section 288a in exchange for dismissal of the other 14 counts and the prior felony conviction allegation. (*Collins, supra*, at p. 211.) Criminal proceedings were subsequently suspended, and the defendant was committed to a state hospital as a mentally disordered sex offender. (*Ibid.*) While there, the Legislature repealed former section 288a and enacted a new section. (*Collins, supra*, at p. 211.) The new section still criminalized forcible oral copulation, but it decriminalized the conduct to which the defendant pled guilty, simple oral copulation between consenting, nonprisoner adults. (*Id.* at pp. 211, 213 & fn. 1.)

Criminal proceedings were thereafter reinstated, at which time the defendant objected to the trial court's jurisdiction to sentence him for conduct that was no longer criminal. (*Collins, supra*, 21 Cal.3d at p. 211.) The trial court overruled the defendant's objection and imposed sentence. (*Id.* at pp. 211–212.) On review, the California Supreme Court concluded that its decision in *People v. Rossi* was controlling and agreed

---

[4] Assembly Bill No. 1171 made technical changes to section 1192.5, effective January 1, 2022, as a result of separate substantive changes to the crime of spousal rape. (Legis. Counsel's Dig., Assem. Bill No. 1171 (2021–2022 Reg. Sess.) Stats. 2021 ch. 626, § 43, p. 72.) The changes made do not affect our analysis in this case.

with the defendant that it was error to sentence him on conduct no longer punishable under the law. (*Collins, supra*, at p. 213, citing *People v. Rossi* (1976) 18 Cal.3d 295, 304.) The high court then turned to the question of remedy. (*Collins, supra*, at p. 214.)

Beginning with the plea bargain principles articulated in *People v. Orin, supra*, 13 Cal.3d at pages 942–943, summarized in *Stamps* and set forth above, *Collins* stated, "Critical to plea bargaining is the concept of *reciprocal* benefits. When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made." (*Collins, supra*, 21 Cal.3d at p. 214, italics added.) The legislative change at issue decriminalized the conduct underlying the sole count to which the defendant pled guilty, thereby eviscerating the plea bargain and leaving the defendant invulnerable to any criminal consequence. (*Id.* p. 215.) In that context, *Collins* explained, "When a defendant gains *total* relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it is his escape from vulnerability to sentence that fundamentally alters the character of the bargain." (*Ibid.*, italics added.) Where a defendant "seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact[,] [t]his is bounty in excess of that to which he is entitled." (*Ibid.*)[5]

However, "the defendant is *also* entitled to the benefit of his bargain. This is not a case in which the defendant has repudiated the bargain by attacking his guilty plea; he attacks only the judgment, and does so on the basis of external events—the repeal and reenactment of [former] section 288a—that have rendered the judgment insupportable." (*Collins, supra*, 21 Cal.3d at p. 216, fn. omitted & italics added.) *Collins* concluded, therefore, that where "external events and not [the] defendant's repudiation undermined

---

**5**    As discussed in part III.B.3., what rises to the level of a substantial deprivation within the meaning of *Collins* is an open question.

th[e] plea bargaining agreement[,]" the court "must fashion a remedy that restores to the state the benefits for which it bargained *without depriving* [*the*] *defendant of the bargain to which he remains entitled*." (*Ibid.*, italics added.) Because the plea bargain resulted in the dismissal of 14 other counts, the court opined in *Collins* that the remedy might "best be effected by permitting the state to revive one or more of the dismissed counts, but limiting [the] defendant's potential sentence .…" (*Ibid.*)

This sentencing limitation was grounded in double jeopardy principles from past cases, which served to "preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Collins, supra*, 21 Cal.3d at p. 216.) The court explained, "The defendant should not be penalized for properly invoking *Rossi* to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain. [¶] The disposition herein substantially restores the agreement previously negotiated. It permits the defendant to realize the benefits he derived from the plea bargaining agreement, while the People also receive approximately that for which they bargained." (*Id.* at p. 217.)

### 3. *Harris*

More recently, in *Harris*, the California Supreme Court considered Proposition 47 in the context of a plea bargain and concluded the electorate intended the change in the law to apply without affording the People the opportunity to rescind the plea bargain. (*Harris, supra*, 1 Cal.5th at p. 987.) The defendant, who was charged with robbery, pled guilty to one count of grand theft, and admitted a prior robbery conviction in exchange for dismissal of the robbery charge and a six-year prison sentence. (*Ibid.*) After Proposition 47 was enacted, the crime to which the defendant pled guilty became a misdemeanor and he filed a petition under section 1170.18 seeking recall of his sentence, reclassification of his felony to a misdemeanor, and resentencing. (*Harris, supra*, at p. 988.) The People argued they would be deprived of the benefit of their bargain and sought to rescind the plea agreement and reinstate the robbery charge. (*Ibid.*) The trial

court recalled defendant's sentence, permitted the People to withdraw from the plea agreement, and reinstated the felony charge. (*Ibid.*) Relying on *Collins*, the appellate court, with one justice dissenting, denied the defendant's petition for writ of mandate and he appealed. (*Harris, supra*, at p. 988.) The California Supreme Court reversed the judgment. (*Id.* at p. 987.)

In *Harris*, the high court considered the principles articulated in two relevant decisions. First, the court summarized the remedy under *Collins*, which, as just discussed, provided that the People could withdraw from the plea agreement and reinstate one or more counts, but the defendant could not be subject to more severe punishment than under the plea agreement. (*Harris, supra*, 1 Cal.5th at pp. 989–990.) The court then summarized the general rule, articulated in *Doe v. Harris*, that "'requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law.'" (*Harris, supra*, at p. 991, quoting *Doe v. Harris* (2013) 57 Cal.4th 64, 73–74 (*Doe*).)

After considering the intent of the initiative, *Harris* concluded the rule of *Doe* applied (*Harris, supra*, 1 Cal.5th at p. 991), and the electorate bound the People to the plea agreement without affording them the opportunity to withdraw, "based on the unambiguous language of section 1170.18 and the expressed intent of Proposition 47" (*id.* at p. 992). The court reached this conclusion on several grounds. First, the petition process provided for by Proposition 47 expressly referred to convictions "'*whether by trial or plea*,'" and "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris, supra*, at p. 991, quoting § 1170.18, subd. (a).)

11.

Second, the statute mandated resentencing, absent a finding that resentencing "'would pose an unreasonable risk of danger to public safety.'" (*Harris, supra*, 1 Cal.5th at pp. 991–992, quoting § 1170.18, subd. (b).) The court noted that "[t]his discretion to find an unreasonable risk provides the 'safety valve' to protect the public; the statute provides no other safety valve such as rescinding a plea bargain" (*Harris, supra*, at p. 992), and "[t]he resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner" (*ibid.*).

Third, the court considered that "[o]ne of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative" and "[a]ccepting the People's position would be at odds with that purpose." (*Harris, supra*, 1 Cal.5th at p. 992.) "'If a reduction of a sentence under Proposition 47 results in the reinstatement of the original charges and elimination of the plea agreement, the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated.'" (*Ibid.*)

For additional support, *Harris* looked to *Doe*, which provided that "'the Legislature [or here, the electorate], for the public good and in furtherance of public policy, and subject to the limitations imposed by the federal and state Constitutions, has the authority to modify or invalidate the terms of an agreement.'" (*Harris, supra*, 1 Cal.5th at p. 992, quoting *Doe, supra*, 57 Cal.4th at p. 70.) Relying on this language, *Harris* concluded, "[t]he electorate may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement. The electorate did so when it enacted Proposition 47." (*Harris, supra*, at p. 992.)

*Harris* also made clear that *Doe* did not impliedly overrule *Collins*, and it distinguished *Collins* on the grounds that the legislative change there "eviscerated the

12.

judgment and the underlying plea bargain entirely, and it did so before the judgment." (*Harris, supra*, 1 Cal.5th at p. 993.)

### 4. *Stamps*

Finally, in *Stamps*, the California Supreme Court considered the appropriate remedy where the defendant was entitled to seek the benefit of an ameliorative change in the law, but the change at issue pertained to the trial court's sentencing discretion under section 1385. (*Stamps, supra*, 9 Cal.5th at p. 692.)[6] The defendant in *Stamps* was sentenced in accordance with a plea bargain that included a nine-year prison sentence, five years of which were imposed for the then-mandatory prior serious felony conviction enhancement (serious felony enhancement) under section 667, former subdivision (a)(1).[7] (*Stamps, supra*, at p. 693.) While the defendant's appeal was pending, the Legislature passed Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), which, effective January 1, 2019, "amended Penal Code sections 667, former subdivision (a)(1), and 1385, former subdivision (b), and granted trial courts the discretion to strike or dismiss the previously mandatory five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1)." (*Ellis, supra*, 43 Cal.App.5th at p. 928, fn. omitted.) On appeal, the defendant sought remand under Senate Bill 1393 so that he could request relief from the enhancement based on the changed law. (*Stamps, supra*, at p. 693.)

The court addressed three issues in *Stamps*. (*Stamps, supra*, 9 Cal.5th at p. 692.) First, the court considered whether a certificate of probable cause under section 1237.5 was required where the issue raised on appeal was based on a postplea change in the law.

---

[6] Senate Bill No. 81 amended section 1385, effective January 1, 2022, but those amendments are not relevant to our analysis here. (Legis. Counsel's Dig., Sen. Bill No. 81 (2021–2022 Reg. Sess.) Stats. 2021, ch. 721, § 1, pp. 1–3.)

[7] Effective January 1, 2022, Assembly Bill No. 1171 made changes to section 667, but those changes are not relevant to our analysis here. (Legis. Counsel's Dig., Assem. Bill No. 1171 (2021–2022 Reg. Sess.) Stats. 2021, ch. 626, § 27, pp. 47–51.)

(*Stamps, supra*, at p. 694.)[8]  The court explained, "'[T]he general rule in California is that plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.' (*Doe v. Harris* (2013) 57 Cal.4th 64, 71.)  'That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them' (*id.* at p. 66), and '[i]t follows … that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement' (*id.* at p. 73.)" (*Stamps, supra*, at pp. 695–696.)[9]  The court concluded that the defendant did not need a certificate of probable cause "because the claim does not challenge [the] plea as defective when made." (*Stamps, supra*, at p. 696.)

Next, the court concluded that Senate Bill 1393, in eliminating the restriction prohibiting courts from striking serious felony enhancements under section 1385, was ameliorative within the meaning of *Estrada* and, therefore, applied retroactively to all cases not yet final on appeal.  (*Stamps, supra*, 9 Cal.5th at p. 699.)

---

[8]     Section 1237.5, provides:

"No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met:

"(a)     The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.

"(b)     The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

[9]     Effective January 1, 2020, the Legislature added section 1016.8 to the Penal Code, which provides, in relevant part, "A plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent" (*id.*, subd. (a)(4)), and "[a] provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy" (*id.*, subd. (b)). (Legis. Counsel's Dig., Assem. Bill No. 1618 (2019–2020 Reg. Sess.) Stats. 2019, ch. 586, § 1, pp. 1–2.)

Finally, the court addressed the appropriate remedy where the defendant sought a form of relief from the trial court which, if granted, would affect the sentence negotiated by the parties. (*Stamps, supra*, 9 Cal.5th at p. 700.) The court rejected the defendant's argument that he was entitled to request the trial court exercise discretion to strike the serious felony enhancement but leave the remainder of the plea bargain intact. (*Ibid*.) The court explained that "section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term. Section 1192.5 allows a plea to 'specify the punishment' and 'the exercise by the court thereafter of other powers legally available to it,' and '[w]here the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and *the court may not proceed as to the plea other than as specified in the plea*.'" (*Ibid.*) Thus, "[e]ven applying section 1385 as amended, long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain" (*id.* at p. 701), and therefore, "it is not enough for [the] defendant to establish that the amended section 1385 applies to him retroactively under *Estrada* in order to receive the remedy he seeks. In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, [the] defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385" (*ibid.*).

The court concluded "the legislative history [did] not demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement." (*Stamps*, *supra*, 9 Cal.5th at p. 702, italics omitted.) The court explained that "Senate Bill 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other

15.

enhancements.  Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision.  Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Ibid.*)

*Stamps* distinguished *Harris*, on which the defendant relied, explaining that Proposition 47 "created a mechanism to allow defendants to seek relief under the new law, even though they had already been sentenced.  [Citations.]  The resentencing provision applied to those 'serving a sentence for a conviction, whether by trial or plea' [citation] and drew 'no express distinction between persons serving final sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence.'  [Citation.]  The provision also allowed defendants who had already completed their sentences to have their offenses designated as misdemeanors.  [Citation.]  The electorate thus evinced an intent that these offenses be treated as misdemeanors no matter how or when a defendant suffered the conviction.  As *Harris* reasoned, to allow the prosecution, in response to a successful resentencing petition, to withdraw from a plea agreement and reinstate dismissed charges would frustrate electoral intent to treat these offenses uniformly as misdemeanors, essentially denying meaningful relief to those convicted through plea bargains." (*Stamps, supra*, 9 Cal.5th at p. 704, citing *Harris, supra*, 1 Cal.5th at p. 992.)

*Stamps* concluded that "[n]othing in the language and legislative history of Senate Bill 1393 suggests an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties.  As discussed, Senate Bill 1393's amendment of section 1385 now allows a trial court to strike a serious felony enhancement just as it may do with any other enhancement.  Unlike in *Harris*, the remedy [the] defendant seeks, to allow the court to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the

16.

type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement. That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Stamps, supra*, 9 Cal.5th at p. 704.)

Nevertheless, "[a]t the time the court accepted the plea agreement and sentenced [the] defendant, the law did not allow it to consider striking the serious felony enhancement in furtherance of justice under section 1385. Senate Bill 1393 changed the law to allow such discretion, and we have now concluded that provision applies retroactively. If he desires, [the] defendant should be given the opportunity to seek the court's exercise of its section 1385 discretion. If the court on remand declines to exercise its discretion under section 1385, that ends the matter and [the] defendant's sentence stands." (*Stamps, supra*, 9 Cal.5th at p. 707.) "However, if the court is inclined to exercise its discretion, … such a determination would have consequences to the plea agreement" given that "the court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain." (*Ibid.*)

"[T]he court [might also] withdraw its prior approval of the plea agreement." (*Stamps, supra*, 9 Cal.5th at p. 708.) "The court's exercise of its new discretion to strike the serious felony enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement. Section 1192.5 contemplates that '[a] change of the court's mind is thus always a possibility.'" (*Ibid.*)

*Stamps* concluded that "'[g]iven that defendants in criminal cases presumably obtained some benefit from the plea agreement, … there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination,

17.

however, lies in each instance with the defendant.'" (*Stamps*, *supra*, 9 Cal.5th at p. 708, quoting *Ellis, supra*, 43 Cal.App.5th at p. 944.) To "short-circuit[] th[e] process by refusing a limited remand 'would be effectively insulating the agreement from retroactive changes in the law, in contravention of the law.'" (*Stamps, supra*, at p. 709, fn. omitted, quoting *Ellis, supra*, at p. 946.)

**B.      Analysis**

As previously stated, all appellate courts and the one superior court weighing in on the issue have concluded that Assembly Bill 1950 is ameliorative within the meaning of *Estrada* and, therefore, it applies retroactively to all cases not yet final on review. Given the People's position on remedy, we first consider whether there is any indication the Legislature intended to exclude from the broad reach of *Estrada* those cases resolved by plea bargain. The answer to that question is one of legislative intent, and the framework guiding our analysis is well established.

"We review de novo questions of statutory construction. [Citation.] In doing so, '"our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'"' [Citation.] We begin with the text, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' [Citation.] 'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.'" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123; accord, *Walker v. Superior Court* (2021) 12 Cal.5th 177, 194; *People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106.)

"'If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statute['s] general purposes. [Citation.] We will avoid any interpretation

18.

that would lead to absurd consequences.' [Citation.]" (*People v. Montes* (2003) 31 Cal.4th 350, 356, quoting *People v. Walker* (2002) 29 Cal.4th 577, 581; accord, *Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) These same principles apply in interpreting a voter initiative. (*People v. Raybon* (2021) 11 Cal.5th 1056, 1065.)

At the outset, we are not the first court to observe that the law has undergone substantial transformation within the past decade and within the past several years in particular in California, leaving courts at every level to determine how to implement an array of changes in the absence of express legislative or voter intent. Many of the questions raised are not susceptible to a single or simple answer. We empathize with the frustration voiced by our colleagues in *Scarano* and urge greater clarity from the Legislature and electorate on these matters. (*Scarano, supra*, 74 Cal.App.5th at pp. 999–1000 & fn. 2 (maj. opn.).)

As we shall discuss, the majority of criminal cases are resolved by plea, and determining whether and how ameliorative changes in the law apply within the context of a plea bargain has proven challenging. The answer will necessarily be informed by the specific nature of the change, its effects, and underlying legislative or voter intent. Courts have agreed that the *Estrada* presumption applies to Assembly Bill 1950 and have agreed on the legislative intent underlying the bill. However, courts have split on what that means in terms of remedy and, more specifically, whether the remedy articulated in *Stamps* is confined to its facts or applies more broadly. For the reasons set forth below, we conclude that the Legislature, in enacting Assembly Bill 1950, reduced the maximum probation term in felony and misdemeanors in all nonfinal cases, except for the express exceptions provided for in sections 1203a and 1203.1. We conclude, further, that this case does not involve the issue that informed the disposition in *Stamps* and, therefore, the remedy articulated in *Stamps* does not apply here.

19.

### 1.    Assembly Bill 1950

#### a.    Language of Bill

As a threshold matter, the Legislature or the electorate may, through express reference to plea bargains, convictions by plea, or resentencing provisions, speak directly to its intent that the change in the law apply to all cases and bind the parties to their plea agreements.  The electorate did so when it enacted Proposition 47, as discussed in *Harris*. (*Harris, supra*, 1 Cal.5th at p. 992.)  The Legislature also did so when it recently enacted Senate Bill No. 483 (2020–2021 Reg. Sess.) (Senate Bill 483 or Sen. Bill 483), which, subject to certain exceptions, invalidates prior prison term and prior drug conviction enhancements imposed under Penal Code section 667.5, former subdivision (b),[10] and Health and Safety Code section 11370.2, respectively.  (Legis. Counsel's Dig., Sen. Bill 483, Stats. 2021, ch. 728, §§ 1–3, pp. 2–4.)

Senate Bill 483 provides, "The Legislature finds and declares that in order to ensure equal justice and address systemic racial bias in sentencing, it is the intent of the Legislature to retroactively apply Senate Bill 180 of the 2017–18 Regular Session and Senate Bill 136 of the 2019–20 Regular Session to all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements. *It is the intent of the Legislature that any changes to a sentence as a result of the act that added this section shall not be a basis for a prosecutor or court to rescind a plea agreement*." (Legis. Counsel's Dig., Sen. Bill 483, Stats 2021, ch. 728, § 1, p. 2, italics added.)

To effect the Legislature's intent, Senate Bill 483 added sections 1171 and 1171.1 to the Penal Code.  Section 1171 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2018, pursuant to Section 11370.2 of the Health and Safety Code, except for any enhancement imposed for a prior conviction of violating or

---

**10**    Effective January 1, 2022, Assembly Bill No. 1171 amended section 667.5, but those amendments are not relevant here.  (Legis. Counsel's Dig., Assem. Bill No. 1171 (2021–2022 Reg. Sess.) Stats. 2021, ch. 626, § 28, pp. 51–53.)

conspiring to violate Section 11380 of the Health and Safety Code is legally invalid." (*Id.*, subd. (a).) Section 1171.1 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (*Id.*, subd. (a).) Both sections have recall and resentencing provisions (§§ 1171, subd. (c), 1171.1, subd. (c)), and cap the sentence by providing that "[r]esentencing … shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed" (§§ 1171, subd. (d)(1), 1171.1, subd. (d)(1)).

Proposition 47 and Senate Bill 483 spoke specifically to plea bargains and resentencing. However, they also expressed intent to bind the parties to their plea bargains, and were designed to extend relief beyond the already broad *Estrada* presumption to include convictions in final cases and to allow trial courts to consider the risk to public safety in determining the availability or scope of relief, adding new sections to the Penal Code to effect this purpose. (§§ 1170.18, subd. (b), 1171, subd. (d)(1), 1171.1, subd. (d)(1).) Assembly Bill 1950 does not share these features; it amended existing Penal Code sections rather than added new statutes and it does not reach beyond nonfinal cases. These and other distinctions aside, "the Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.'" (*Frahs, supra*, 9 Cal.5th at p. 634, quoting *People v. Weidert* (1985) 39 Cal.3d 836, 844.) Given the *Estrada* presumption and its longstanding application to all cases not yet final on review, the Legislature's mere silence on plea bargain or resentencing procedures simply does not support a reasonable inference that it intended to exclude plea-bargained cases from relief under Assembly Bill 1950. (*Scarano, supra*, 74

21.

Cal.App.5th at p. 1019 (dis. opn. of Raye, P.J.); *Stewart, supra*, 62 Cal.App.5th at pp. 1078–1079, review granted.)

As the California Supreme Court has explained, "[b]ecause the *Estrada* rule reflects a presumption about legislative intent, rather than a constitutional command, the Legislature (or … the electorate) may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal law amendments if it so chooses." (*People v. Conley* (2016) 63 Cal.4th 646, 656.) "Our cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*Id.* at pp. 656–657, quoting *In re Pedro T.* (1994) 8 Cal.4th 1041, 1048–1049.)

Therefore, we next consider the exclusions the Legislature expressly included in the bill. As previously stated, the Legislature provided that if the court granted probation, the probationary period may not exceed two years in felony cases and one year in misdemeanor cases. (§§ 1203.1, subd. (a), 1203a, subd. (a).) However, for felony cases, the Legislature specifically excluded violent felonies within the meaning of section 667.5, subdivision (c) (§ 1203.1, subds. (g)(3)(A), (*l*)(1)), and grand theft from an employer, embezzlement, and theft by false pretenses where the value of the property taken exceeds $25,000 (*id.*, subd. (*l*)(2)); and for both felony and misdemeanor cases, the Legislature excluded offenses with specific probationary periods (*id.*, subd. (*l*)(1)).

This safety valve was added to the third and final version of the bill, and its inclusion represents the Legislature's express determination that certain offenses— violent offenses, select offenses resulting in a high-dollar loss amount,[11] and offenses

---

[11] These crimes were described as "'white-collar crimes'" by the bill's author. (Sen. Com. on Public Safety, Rep. of Assem. Bill 1950, June 10, 2020, p. 4.)

where the Legislature previously determined that public policy was served by a specific term of probation—should be excluded from relief.  (*Schulz, supra*, 66 Cal.App.5th at pp. 897–898.)  Under the *expressio unius est exclusio alterius* principle of statutory interpretation, "the presence of express exceptions ordinarily implies that additional exceptions are not contemplated."  (*People v. Standish* (2006) 38 Cal.4th 858, 870; accord, *In re J.W.* (2002) 29 Cal.4th 200, 209.)  "[T]he principle always is subordinate to legislative intent" (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 126; accord, *People v. Standish, supra*, at p. 870), but here, as discussed next, its application is not contrary to the intent underlying the legislation.

### b.      Legislative Intent

"'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation.'" (*People v. Moran* (2016) 1 Cal.5th 398, 402, quoting *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  It is "'an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in nature [citation].'"  (*People v. Moran, supra*, at p. 402, quoting *People v. Howard* (1997) 16 Cal.4th 1081, 1092.)  Given the purpose of probation and the subset of criminal defendants for whom it is an appropriate disposition, the legislative history for Assembly Bill 1950 reflects, at bottom, concern "that lengthy probationary periods do not serve a rehabilitative function and unfairly lead to reincarceration for technical violations."  (*Quinn, supra*, 59 Cal.App.5th at p. 879; accord, *Stewart, supra*, 62 Cal.App.5th at pp. 1073–1074, review granted; *Sims, supra*, 59 Cal.App.5th at pp. 961–962; *Burton, supra*, 58 Cal.App.5th Supp. at pp. 17–18.)[12]

---

[12]      As stated in *Schulz*, Assembly Bill 1950 "was drafted [specifically] to address the following factors:  the effect of probation on already marginalized populations; the burden of probation fees on the poor; the high cost to taxpayers of incarcerating individuals for minor, technical, noncriminal violations of probation; and research reflecting that probation services are most effective the first 18 months of supervision and that increased supervision and services earlier on reduces likelihood to recidivate."  (*Schulz, supra*, 66 Cal.App.5th at p. 897, citing Sen.

23.

The legislation was underpinned by research showing "that probation services, such as mental health care and addiction treatment, are most effective during the first 18 months of supervision," and "that providing increased supervision and services earlier reduces an individual's likelihood to recidivate." (Sen. Com. on Public Safety, Rep. of Assem. Bill 1950, June 10, 2020, p. 4.) Additional research cited "'suggests that the maximum time needed to engage probationers in behavior change and reduce the likelihood of reoffending is no more than two years, while also creating incentives for individuals to engage in treatment and services early on.'" (*Id.* at p. 5.) The bill's author concluded that it "creates reasonable and evidence-based limits on probation terms, while lowering costs to taxpayers, allowing for the possible investment of savings in effective measures proven to reduce recidivism and increasing public safety for all Californians. The bill also supports probation officers in completing the duties of their job more effectively, by making their caseloads more manageable." (*Id.* at p. 4.)

As *Harris* recognized, "[m]any criminal cases are resolved by negotiated plea." (*Harris, supra*, 1 Cal.5th at p. 992.) Indeed, "plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. [Citations.] Commentators have estimated that in most jurisdictions, between 80 and 90 percent of criminal cases are disposed of by guilty pleas [citation], which, in the majority of cases, are the product of plea bargains." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933; accord, *Lafler v. Cooper* (2012) 566 U.S. 156, 170, citing *Missouri v. Frye* (2012) 566 U.S. 134, 143–144 ["[C]riminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas."]; *In re Chavez* (2003) 30

Com. on Public Safety, Rep. of Assem. Bill 1950 (2019–2020 Reg. Sess.) June 10, 2020, pp. 4–5.)

24.

Cal.4th 643, 654, fn. 5 [vast majority of criminal cases resolved by plea]; *People v. West* (1970) 3 Cal.3d 595, 604–605.)

Assembly Bill 1950 "reflects [the Legislature's] categorical determination that a shorter term of probation is sufficient for the purpose of rehabilitation." (*Quinn, supra*, 59 Cal.App.5th at p. 885.) Given that the majority of all criminal cases are resolved by plea, applying Assembly Bill 1950 only in a minority subset of cases would frustrate the Legislature's intent to advance specific social and financial public policy goals through the reduction of probation terms, and it would do so in most cases. (See *Harris, supra*, 1 Cal.5th at p. 992.) These financial and social goals were *the* driver for the legislation rather than a benefit merely incidental to a separate primary purpose. Applying Assembly Bill 1950 to all cases not yet final on review except for those specifically excluded by the Legislature effectuates legislative intent. (*Scarano, supra*, 74 Cal.App.5th at p. 1019 (dis. opn. of Raye, P.J.).) A contrary interpretation that excludes application in cases in which probation was a term of the plea bargain plainly and directly thwarts legislative intent. (See *Butler, supra*, 75 Cal.App.5th at p. 225 [allowing prosecutor "to withdraw from the plea agreement … would frustrate legislative intent"]; accord, *Stewart, supra*, 62 Cal.App.5th at pp. 1078–1079 [same], review granted.)

### 2. *Stamps* Remedy

The People raise no dispute as to the foregoing, but contend that the remedy in *Stamps* nevertheless applies where probation was a negotiated term of the parties' plea bargain. We recognize there is a split of authority on the application of *Stamps* to ameliorative legislation in general,[13] and in the context of Assembly Bill 1950, one

---

[13] In *Barton II* and *Hernandez*, this court applied the *Stamps* remedy to legislative changes that eliminated specific sentence enhancements, concluding that although the changes were retroactive under *Estrada*, the defendants were not entitled to obtain relief while also maintaining the remainder of their plea bargain. (*People v. Barton* (2020) 52 Cal.App.5th 1145, 1158–1159 (*Barton II*) [Sen. Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180 or Sen. Bill 180)]; *People v. Hernandez* (2020) 55 Cal.App.5th 942, 956–959 [Sen. Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136 or Sen. Bill 136)], review granted Jan. 27, 2021, S265739 & transferred

appellate court, with one justice dissenting, has applied the *Stamps* remedy.**14** (Compare *Scarano, supra*, 74 Cal.App.5th at pp. 1009–1013 (maj. opn.) [applying *Stamps*] with *Butler, supra*, 75 Cal.App.5th at pp. 221–225 [rejecting application of *Stamps* remedy]; *Scarano, supra*, at pp. 1018–1019 (dis. opn. of Raye, P.J.) [same]; *Stewart, supra*, 62 Cal.App.5th at pp. 1077–1079 [same], review granted.) However, we conclude *Stamps* is distinguishable and it neither requires nor supports a result different than we reach in this case.

In *Stamps*, as discussed, the California Supreme Court concluded that Senate Bill 1393 applied retroactively under *Estrada* (*Stamps, supra*, 9 Cal.5th at p. 699), and because plea bargains are not insulated from changes in the law the Legislature or electorate intended to apply (*id.* at p. 707, citing *Ellis, supra*, 43 Cal.App.5th at p. 946; § 1016.8), the defendant was entitled to the relief the Legislature provided, which was the opportunity to request relief under section 1385 from the serious felony enhancement (*Stamps, supra*, at pp. 704–705). Here, too, Assembly Bill 1950 applies retroactively

Dec. 22, 2021, with instructions to vacate opinion & reconsider matter in light of Sen. Bill 483 & limiting citation to potentially persuasive value only (*Hernandez*); accord, *People v. Ruggiero* (2021) 65 Cal.App.5th 1126, 1129–1130 [*Stamps* applies to Sen. Bill 136 with sentence cap on any renegotiated plea]; *People v. Houle* (2021) 64 Cal.App.5th 395, 403–404 [same], review granted July 28, 2021, S269337; *People v. Joaquin* (2020) 58 Cal.App.5th 173, 178 [same], review granted Feb. 24, 2021, S266594; *People v. Griffin* (2020) 57 Cal.App.5th 1088, 1096–1099 [same], review granted Feb. 17, 2021, S266521; cf. *People v. Andahl* (2021) 62 Cal.App.5th 203, 212–215 [*Stamps* remedy does not apply relief under to Sen. Bill 136], review granted June 16, 2021, S268336; *People v. France* (2020) 58 Cal.App.5th 714, 725–730 [same], review granted Feb. 24, 2021, S266771.)

The enactment of Senate Bill 483 abrogated *Barton II* and *Hernandez*, and as the law continues to evolve post-*Stamps*, so, too, do views on the matter. Legislative, or voter, intent is the critical inquiry and is context specific. In this instance, for the reasons set forth herein, we conclude that defendants are entitled to relief under Assembly Bill 1950 and the *Stamps* remedy does not apply.

**14** In addition to the cases cited in footnote 13, *People v. Prudholme*, 2021 Cal.App. Unpub. Lexis 5513, review granted November 10, 2021, S271057, is pending review by the California Supreme Court. The court ordered briefing on the issues of whether Assembly Bill 1950 is retroactive under *Estrada* and whether the *Stamps* remand procedure applies.

under *Estrada* and because defendant's plea bargain is not insulated from this change in the law (§ 1016.8), he is entitled to the relief the Legislature provided, which is the reduction of the maximum term of probation from three years to one year.

*Stamps* addressed an additional concern not presented here, however. Senate Bill 1393 did not directly modify a term of the parties' plea bargain, unlike Assembly Bill 1950. Rather, it merely afforded the defendant the opportunity to ask the trial court to exercise its sentencing discretion under section 1385 as to the serious felony enhancement. The defendant in *Stamps* sought more than the relief to which he was entitled under Senate Bill 1393; should he succeed in persuading the court to strike the enhancement under section 1385, he also wanted to maintain the rest of his plea bargain. The effect of this is a request that the trial court modify a term of the plea bargain, unilaterally. Under established law, the trial court lacks the statutory or inherent authority to do so. (§ 1192.5; *Stamps, supra*, 9 Cal.5th at p. 701; *People v. Segura, supra*, 44 Cal.4th at p. 931.)

Therefore, *Stamps* considered whether "the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Stamps, supra*, 9 Cal.5th at p. 701.) The legislative history reflected concern that under then-existing law, the lack of discretion to strike five-year serious felony enhancements resulted in a """"rigid and arbitrary system [that] mete[s] out punishments that are disproportionate to the offense, which does not serve the interests of justice, public safety, or communities."""" (*Id.* at p. 702.) The legislative history also reflected that the bill would result in an estimated cost savings in the millions. (*Ibid.*) However, the primary purpose in enacting Senate Bill 1393 was to achieve uniformity in sentencing discretion; that is, "to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court the power it would otherwise lack …." (*Stamps, supra*, at p. 704.) Thus, the underlying legislative intent not only failed to offer support for the defendant's argument that he was entitled to

27.

request the enhancement be stricken while maintaining the remainder of his bargain, but it undercut his argument. (*Id.* at p. 702.)

The remedy in *Stamps* served to reconcile the defendant's entitlement to request the trial court exercise its newly expanded sentencing discretion under Senate Bill 1393 with the trial court's lack of authority to modify a term of the parties' plea bargain. In order to give effect to the former within the confines of established law governing the latter, the court concluded the defendant was entitled to *request* relief under Senate Bill 1393. This afforded the defendant all that he was entitled to under the law: the opportunity to avail himself of the ameliorative change under Senate Bill 1393. If the trial court concluded it was not in the interest of justice to strike the enhancement, that would end the matter. If the trial court was inclined to grant relief in a given case, it would necessitate modification of the plea agreement and whether viewed as a withdrawal by the court of its prior approval or an opportunity afforded to the prosecutor to either accept the new terms or withdraw from the plea agreement, having the enhancement stricken while also maintaining the remainder of the bargain was in excess of the bounty to which the defendant was entitled under Senate Bill 1393. Reduction in the maximum probation term under Assembly Bill 1950, which was effected by the Legislature directly and does not rely upon the trial court's exercise of its sentencing discretion, is distinguishable. (*Scarano, supra*, 74 Cal.App.5th at p. 1019 (dis. opn. of Raye, P.J.) ["The power at issue is not the unilateral power of a court to modify a plea agreement but the power of a court to determine that the agreement has been superseded by the Legislature's intent as expressed in a particular legislative enactment."]; *Stewart, supra*, 62 Cal.App.5th at pp. 1078–1079 [discussing unilateral modification by trial court versus "'direct and conclusive effect on the legality of existing sentences'"], review granted.)

### 3. *Collins* Principles

Finally, we consider *Collins*, as the California Supreme Court has not departed from the decision and *Harris* affirmed it remains good law. (*Harris, supra*, 1 Cal.5th at p. 993.) *Stamps* did not discuss *Collins* at length and did not look to *Collins* for remedy, but we believe the explanation lies in the distinction between the types of relief afforded by the legislation at issue—mere entitlement to request the trial court exercise newly acquired sentencing discretion, which did not directly affect any term of the plea bargain (*Stamps, supra*, 9 Cal.5th at p. 707), compared with decriminalization of conduct, which directly affected a term of the plea bargain and undermined the bargain entirely (*Collins, supra*, 21 Cal.3d at pp. 213–215).

We already concluded that the People's position they should be afforded the opportunity to withdraw from the plea bargain is contrary to the plain language of Assembly Bill 1950 and would frustrate legislative intent, and we explained why *Stamps* is distinguishable as to remedy. The result urged by the People is also inconsistent with the principles articulated in *Collins* in several respects.

First, the People's suggested remedy—withdrawal and return to the status quo— speaks only to their interests without taking into consideration defendant's interests, in disregard of the concept of reciprocity in plea bargaining. This is a situation where the Legislature afforded defendant the relief at issue; he did not elect to repudiate his plea bargain. (*Collins, supra*, 21 Cal.3d at p. 216; cf. *Stamps,* 9 Cal.5th at pp. 707–708.) Second, the People's suggested remedy places defendant in the untenable position of potentially being both deprived of the benefit of the change in the law to which he is entitled *and* deprived of the benefit of his bargain. *Collins* proscribes such a result; as previously stated, a defendant exercising his right to appeal based on an ameliorative change in the law "should not be penalized … by being rendered vulnerable to punishment more severe than under his plea bargain." (*Collins, supra*, 21 Cal.3d at pp. 216–217; accord, *People v. Hanson* (2000) 23 Cal.4th 355, 360 & fn. 2 (*Hanson*);

29.

*People v. Hood* (1969) 1 Cal.3d 444, 459; *People v. Henderson* (1963) 60 Cal.2d 482, 496–497 (*Henderson*); see *People v. Andahl, supra*, 62 Cal.App.5th at p. 213 [recognizing, in the context of Sen. Bill 136, that allowing recission of plea agreement by People or recission of approval by court "may result in the defendant, paradoxically, facing a harsher sentence than he did before he asserted his rights under *Estrada*"], review granted.)**15**

 *Collins* approved a remedy designed to restore the People's benefit of the bargain. However, in that case, as discussed, the Legislature decriminalized the conduct underlying the single count to which the defendant pled guilty, and the court recognized that "[w]hen a defendant gains *total* relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain." (*Collins, supra*, 21 Cal.3d at p. 215, italics added.) Under those specific circumstances, affording

---

**15**   "Under the general rule of state constitutional law that the California Supreme Court has referred to as the *Henderson* rule, '[w]hen a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing.'" (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 431, italics omitted, quoting *Hanson, supra*, 23 Cal.4th at p. 357.) In *Henderson*, the California Supreme Court explained that "[a] defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (*Henderson, supra*, 60 Cal.2d at p. 497; accord, *Hanson, supra*, at p. 365.) The rule, which is grounded in double jeopardy and due process principles, serves to shield criminal defendants from having to choose between letting an erroneous conviction stand and risking more severe consequences on remand. (*Hanson*, *supra*, at pp. 365–367.) "'"[A] defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma."'" (*Henderson, supra*, at p. 496, quoting *Gomez v. Superior Court* (1958) 50 Cal.2d 640, 651–652; *Hanson, supra*, at p. 366 ["More basically, it is the chilling effect on the right to appeal generated by the risk of a more severe punishment that lies at its core."].) There are exceptions to the rule, including where a defendant "seeks to withdraw a guilty plea or repudiate a plea bargain" (*Hanson, supra*, at p. 360, fn. 2; see *Stamps, supra*, 9 Cal.5th at pp. 707–708), or "if the initial sentence was unlawful or unauthorized" (*People v. Neely* (2009) 176 Cal.App.4th 787, 800, citing *People v. Craig* (1998) 66 Cal.App.4th 1444, 1449; accord, *People v. Serrato* (1973) 9 Cal.3d 753, 763–765, disapproved on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1).

the defendant relief from his sentence while maintaining the plea bargain would result in "bounty in excess of that to which he is entitled" (*ibid.*), and the court concluded that restoring lost benefits to the state "may be best effected " by allowing the state to revive some of the dismissed charges so long as the defendant did not face more severe punishment than his plea bargain had called for (*id.* at p. 216).

As a practical matter, given defendant's entitlement to the reduction of his probation term and the limitation in *Collins* precluding any punishment greater than that under the terms of the plea bargain, the options for restructuring a plea bargain in the context of a probation case would appear limited.[16] Notwithstanding practical difficulties, the reduction in defendant's term of probation differs materially from the decriminalization of the defendant's conduct in *Collins* and does not necessitate the restorative remedy approved there.

Assembly Bill 1950 merely reduces the probationary period to which defendant is subject under the terms of his plea bargain, in accordance with the Legislature's determination that probationary periods beyond 18 to 24 months do not serve the rehabilitative goal of probation and divert resources that are best focused on the first 12 to 24 months of probation. Assembly Bill 1950 does not substantially deprive the state of the benefit of its bargain by either decriminalizing the conduct to which defendant pled or affording him total relief from criminal consequences through the elimination of probation. *Collins* is distinguishable on this point, therefore. A contrary conclusion would thwart Legislative intent, as discussed, and would contravene section 1016.8, which codified the rule in *Doe* and provides that plea agreements are not insulated from changes in the law that the Legislature intended to apply. (§ 1016.8, subd. (a)(1).)

---

[16]    Probation is not technically punishment, but it is nevertheless a restrictive, burdensome consequence imposed as a result of conviction. (*Schulz, supra*, 66 Cal.App.5th at pp. 894–895; *Sims, supra*, 59 Cal.App.5th at p. 959; *Burton, supra*, 58 Cal.App.5th Supp. at pp. 15–16.)

Where that line as drawn in *Collins* might lie in other contexts—that is, at what point the state has been substantially deprived of the benefit of its bargain such that a restorative remedy is required—is an open question. The Legislature or electorate may certainly, in enacting an ameliorative change in the law, express intent to bind the parties to their plea bargains, as in Senate Bill 483 (Legis. Counsel's Dig., Sen. Bill 483, Stats. 2021, ch. 728, § 1, p. 2; §§ 1171, subds. (c)–(d)(1), 1171.1, subds. (c)–(d)(1)), and Proposition 47 (*Harris, supra*, 1 Cal.5th at p. 992). In other instances, the ameliorative change in the law may apply to all nonfinal cases under *Estrada* but the text and intent are silent as to whether the Legislature or electorate intended the parties be bound to their plea bargains, irrespective of how significantly the change might undermine a particular plea bargain. In that situation, the restorative remedy *Collins* approved may best be viewed as a safety net, applicable in situations not where an ameliorative change has merely affected a term of the plea bargain, but where the change to which the defendant is entitled has the unintended consequence of substantially undermining the basis for the plea bargain, leaving the defendant with a windfall beyond that which was intended. (*Collins, supra*, 21 Cal.3d at pp. 215–216; see *Scarano, supra*, 74 Cal.App.5th at p. 1020 (dis. opn. of Raye, P.J.).) The decriminalization of the conduct underlying the sole count to which the defendant in *Collins* pled, leaving him invulnerable to punishment, is an example of this unintended consequence and would seem to represent one end of a spectrum. (*Collins, supra*, at pp. 215–216.)[17]

---

[17] As set forth in *Barton I*, the defendant pled guilty to two charges and admitted suffering two prior drug offense convictions in exchange for dismissal of four other charges and a stipulated sentence of eight years eight months. (*People v. Barton* (2019) 32 Cal.App.5th 1088, 1092 (*Barton I*).) A concern underlying our decision in *Barton II* was that the defendant's sentence was reduced by almost 70 percent following Senate Bill 180's elimination of the two prior drug offense enhancements she admitted as part of her plea deal, which constituted six years of her total sentence. (*Barton II, supra*, 52 Cal.App.5th at p. 1155.) In *Hernandez*, elimination of the prior prison term enhancements reduced the defendant's sentence by 20 percent. (*Hernandez, supra*, 55 Cal.App.5th at p. 946.) These are fair concerns and in the context of Senate Bill 180 and Senate Bill 136, they were answered by the enactment of Senate

It does not appear that a bright line rule is readily available, as each statute or initiative must first be analyzed and then, to the extent *Estrada* applies but there is no clear intent to bind the parties to their plea bargains irrespective of the potential consequences to the bargain, the impact on the plea bargain must be considered through the lens of *Collins*. It bears repeating that not every impact on a plea bargain will raise concern; *Collins* spoke to a substantial deprivation and did so in the context of a complete evisceration of the bargain. (*Collins, supra*, 21 Cal.3d at p. 215; *Harris, supra*, 1 Cal.5th at p. 993; see *Scarano, supra*, 74 Cal.App.5th at p. 1020 (dis. opn. of Raye, P.J.).) Moreover, as the court recognized in *Stamps*, not every plea bargain will involve dismissed counts or enhancements allowing for some measure of reconstitution. (*Stamps, supra*, 9 Cal.5th at p. 709.)

The questions raised by these issues simply do not lend themselves to easy answers. We anticipate further clarification from the California Supreme Court in light of the cases currently pending review, cited herein. Given the interpretative difficulties courts have faced, the divergence of opinion on these matters, and the sheer volume of nonfinal criminal cases in this state, the majority of which involve plea bargains, the benefit of greater specificity from the Legislature, or the electorate, cannot be overstated.

### 4.	Defendant Entitled to Modification on Review

In sum, we conclude that defendant is entitled under Assembly Bill 1950 to modification of his probation term to no more than one year. We need not remand a matter when it would be an idle act wasteful of judicial resources (*People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904), and because the maximum probationary period has expired, we shall modify defendant's probation term on review (§ 1260).

---

Bill 483, which provided that prosecutors may not rescind plea agreements, and included recall and resentencing provisions. (Legis. Counsel's Dig., Sen. Bill 483, Stats. 2021, ch. 728, §§ 1–3, pp. 2–4; §§ 1171, subds. (c)–(d), 1171.1, subds. (c)–(d).)

The People's remaining arguments do not compel a different result. They contend that remand would permit the trial court to adjust, modify, or strike any probation terms prior to the termination of probation, and would allow the trial court to determine whether defendant met his conditions of probation for the purpose of expungement relief under section 1203.4, subdivision (a).[18] However, defendant entered his plea and the trial court imposed probation in October 2020. Therefore, given our conclusion that he is entitled to application of Assembly Bill 1950, his one-year probation term has ended by operation of law. (*People v. Chavez* (2018) 4 Cal.5th 771, 783 ["[S]ection 1203.3 provides for automatic discharge at the end of the probation term."].) Further, modification of the term on review will not deprive the trial court of its authority to determine whether defendant successfully completed probation or whether he has met the requirements for expungement under section 1203.4, subdivision (a), in the event he applies for such relief.

---

[18]    Assembly Bill No. 1281 amended section 1203.4 effective January 1, 2022, but the changes are not relevant to our analysis. (Legis. Counsel's Dig., Assem. Bill No. 1281 (2021–2022 Reg. Sess.) Stats. 2021, ch. 209, § 1, p. 1–3.)

## DISPOSITION

In accordance with Assembly Bill 1950, defendant's three-year probation term is reduced to one year, and the trial court is directed to amend its records to reflect this modification. The judgment is otherwise affirmed.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

PEÑA, J.